No. 96-616

IN THE SUPREME COURT OF THE STATE OF MONTANA

1997

JOYCE TIPTON and
LEONA D. WETHERALL,

Plaintiffs and Appellants,

v.

TERRY T. BENNETT and
BRENDA M. BENNETT,
husband and wife,

Defendants, Respondents
and Cross-Appellants.

APPEAL FROM:   District Court of the First Judicial District,
In and for the County of Lewis & Clark,
The Honorable Dorothy McCarter, Judge presiding.

COUNSEL OF RECORD:

For Appellants:

Thomas F. Dowling; Dowling Law Firm,
Helena, Montana

For Respondents:

Thomas Q. Johnson; Keller, Reynolds, Drake,
Johnson & Gillespie, Helena, Montana

Submitted on Briefs: February 20, 1997

Decided: March 11, 1997
Filed:


_____
Clerk

Justice W. William Leaphart delivered the Opinion of the Court.


Joyce Tipton and Leona Wetherall filed suit against Terry and Brenda Bennett seeking to enforce a restriction contained in the Bennetts' deed. This is an appeal by Tipton and Wetherall from the findings of fact, conclusions of law and order entered by the District Court after a bench trial. The Bennetts filed a cross-appeal. We affirm in part, reverse in part and remand for further proceedings.

Background

Although the parties appeal from certain legal conclusions reached by the court, they do not contest the court's findings of fact. Accordingly, we set forth the following background which tracks the District Court's factual recitation:

The Bennetts and Tipton entered into an agreement to sell and purchase real property, dated January 12, 1994, whereby the Bennetts were to purchase from Tipton six lots in the Seaver Park Addition, East Helena, Montana. A counteroffer was executed between the parties whereby the Bennetts acknowledged that Tipton's deed restrictions were a part of any buy/sell agreement.

On February 11, 1994, a warranty deed was executed by Tipton conveying the six lots to the Bennetts with the following deed restrictions, among others:

That the real property hereof shall be used strictly for residential purposes and no business, trade or manufacture of any sort or nature shall be conducted thereon.


After having purchased the lots, the Bennetts constructed a storage building on the property. The building had a ground floor area of 3,200 square feet and a height of 21 feet 1 inch. Appellant Wetherall is the owner of the property immediately adjacent to the Bennetts' property. Wetherall's property is subject to the same deed restrictions set forth above. Prior to purchasing this property, the Bennetts asked a real

estate agent to show them some property on which they would be able to construct a large storage-type building. The Bennetts purchased the property in question after being assured by the real estate agent that the deed restrictions did not preclude building such a structure. The real estate agent advised Tipton that the Bennetts intended to build a garage and then a house, six months to a year later.

After purchasing the property, the Bennetts obtained a building permit to construct the storage building. The stated purpose of the building on the permit application was for "personal storage." At trial, the Bennetts described the building as a large garage. The court, however, found that it looked like a storage building rather than a residential garage. To date, no house has been erected on the property and the Bennetts testified that they would not be building a house on the property for the next few years.

The neighborhood in the immediate vicinity of the property in question consists of single family residences. The court found that, "[t]he storage building does not look like a large garage and does not blend in with the character of the neighborhood." The neighbors characterized the building as an eyesore and felt that the building has devalued their properties. The Bennetts have been storing only personal property in the building. There was no evidence that they have used the building for commercial or business purposes.

The Bennetts argue that since Tipton was forewarned of the Bennetts' intent to build a storage building and since she acquiesced in its construction, she is estopped from challenging the existence of the building.

Having found the above facts, the District Court concluded that the restrictions were clear and unambiguous and that the Bennetts, although not in violation of the restriction on commercial use of the property, were in violation of the "for residential purposes only" restriction. The court then ordered that the Bennetts either remove the storage building within six months or place a residential dwelling on the property within one year from the date of the order. The court rejected the Bennetts' estoppel argument.

Discussion

Recently in Toavs v. Sayre (Mont. 1997), ___ P.2d ___ , (No. 96-611, decided March 4, 1997) we held:

In interpreting restrictive covenants, we apply the same rules as apply to interpreting contracts. Gosnay v. Big Sky Owners Ass'n (1983), 205 Mont. 221, 227, 666 P.2d 1247, 1250. We read all covenants as a whole to ascertain their meaning. Gosnay, 666 P.2d at 1250. Where the language of the covenant is clear and explicit, that language will govern our interpretation of the

covenants as a whole. The language of the covenant is to be understood in its ordinary and popular sense. Section 28-3-501, MCA. Restrictive covenants are to be strictly construed and ambiguities in a covenant are to be construed to allow free use of the property. Town & Country Estates Ass'n v. Slater (1987), 227 Mont. 489, 492, 740 P.2d 668, 670-71 (quoting State v. District Court (1980), 187 Mont. 126, 130, 609 P.2d 245, 248). However, the free use of the property must be balanced against the rights of the other purchasers in the subdivision.

Here, the deed in question restricts use of the property to "residential" use only. The question presented is whether the Bennetts' 3,200 square foot storage building is consistent with that restriction. We addressed a similar question in Hillcrest Homeowners Ass'n v. Wiley (1989), 239 Mont. 54, 778 P.2d 421. Hillcrest involved restrictive covenants in a residential subdivision which limited use to "single family residential purposes." Wileys purchased a lot in the subdivision and erected a steel sided garage. Seven years later, when Wileys had not constructed a residence in conjunction with the garage, the Homeowner's Association filed suit to have the garage removed. The district court held that the garage did not violate the restrictive covenants. Hillcrest, 778 P.2d at 422.

Relying on Webster's Ninth New Collegiate Dictionary (1986), we defined "residential" as "'used as a residence or by residents.'" "Residence" was defined as "'the act or fact of dwelling in a place for some time.'" We then noted: "Consistent with these definitions, courts have held that a garage built on a lot without a dwelling house on the same lot violates a restrictive covenant when the covenant specifically limits a lot's use to 'residential purposes.'" Hillcrest, 778 P.2d at 423. We also quoted with approval the Washington Court of Appeals' holding that: "A private garage is a proper appurtenance necessary to the enjoyment of a dwelling house and does not violate a 'for residence purposes only' covenant [cites omitted]." Hillcrest, 778 P.2d at 423 (citing Sandy Point Improvement Co. v. Huber (Wash.App. 1980), 613 P.2d 160). Based upon these authorities, we reversed the district court, and held:

Reading the covenant as a whole and in light of the popular and ordinary meaning of "residential," a garage, by itself, is not consistent with "single family residential purposes" when the garage is not used in conjunction with a residential dwelling.

Hillcrest, 778 P.2d at 423.

In the present case, the District Court found that the

building in question "is not even a garage, but a large storage building." Thus, the court held that the Bennetts are in violation of the covenant restricting use to "residential purposes." The court then observed that the covenants do not prohibit a storage building if its use is incidental to a residential dwelling located on the property. Accordingly, the court ordered the Bennetts to either remove the building within six months or construct a residential dwelling on the premises within one year. We affirm the court's conclusion that the building violates the covenant.

We reverse the court's order in that it allows the Bennetts to keep the storage building on the condition that they construct a residence on the property within one year. This later provision assumes that any building used incidental to a residence is permissible under the covenant. We hold that this interpretation of the covenant is too broad. The covenant clearly and unambiguously restricts usage to "residential purposes." The question is whether a large storage building qualifies as "for residential purposes." The District Court's own factual findings do not support such a conclusion. In Hillcrest, we recognized that a garage "is a proper appurtenance necessary to the enjoyment of a dwelling house . . . . " Hillcrest, 778 P.2d at 423. In the present suit, the District Court acknowledged that the structure is not a garage; rather it is a 3,200 square foot storage building. With or without a residence, a 3,200 square foot storage building is not an appurtenance necessary to the enjoyment of a dwelling house. The building violates the covenant, not only because it stands alone without a dwelling, but also due to the fact that a 3,200 square foot storage building is not consistent with "residential purposes." In that it allows the Bennetts to keep the storage building on the condition that they construct a dwelling within one year, the court's order is reversed.

The Bennetts' claim of estoppel

The Bennetts argue strenuously that, since Tipton knew, before she sold the property to the Bennetts, that they planned to build a storage building and since she acquiesced in its construction, she is equitably estopped from complaining about the building. The District Court rejected this theory.

Even assuming, for sake of argument only, that Tipton would be equitably estopped from complaining, there is no argument or basis for finding that Wetherall, the other plaintiff to this suit, received any advance notice of the Bennetts' intent or that she explicitly or impliedly consented to construction of the building. That being the case, even if Tipton were estopped, we would arrive at the same conclusions on the basis of Wetherall's complaint. Accordingly, there is no need to discuss equitable estoppel. We affirm the District Court in its rejection of the Bennetts' estoppel theory.

Affirmed in part, reversed in part and remanded for further

proceedings consistent herewith.

/S/   W. WILLIAM LEAPHART

We concur:

/S/   JAMES C. NELSON
/S/   JIM REGNIER
/S/   TERRY N. TRIEWEILER
/S/   KARLA M. GRAY