
DA 06-0414

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2007 MT 265

DENNIS MICKLON,

      Plaintiff and Appellant,

  v.

ARTHUR DUDLEY and LYNN C. DUDLEY,

      Defendants and Appellees.

APPEAL FROM:    District Court of the Nineteenth Judicial District,
In and For the County of Lincoln, Cause No. DV-2005-85
Honorable Michael C. Prezeau, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          William A. Douglas, Douglas Law Firm, Libby, Montana

      For Appellees:

          James D. Reintsma, Reintsma Law Firm, Libby, Montana

Submitted on Briefs:  May 9, 2007

Decided:  October 22, 2007

Filed:

_____
Clerk

Justice James C. Nelson delivered the Opinion of the Court.

¶1 Dennis Micklon appeals from the decision of the District Court for the Nineteenth Judicial District, Lincoln County, holding that Arthur and Lynn C. Dudleys' 3,000-square-foot shop did not violate a restrictive covenant limiting lot use within the parties' subdivision to residential use. We reverse.

¶2 We restate the issue on appeal as follows: Did the District Court err in concluding that the shop on the Dudleys' lot did not violate the subdivision's restrictive covenant mandating that "[n]o lot shall be used for any purpose except residential use"?

## FACTUAL AND PROCEDURAL BACKGROUND

¶3 The Lincoln West Subdivision (the subdivision) is a 10-lot subdivision located in Lincoln County, Montana, near the town of Libby. On October 20, 1983, the subdivision's developers (William L. Anderson, Karen M. Anderson, and Fred D. Wolff) filed the subdivision's Declarations of Conditions, Covenants and Restrictions (restrictive covenants) with the Lincoln County Clerk and Recorder. Most relevant to this appeal is paragraph 6 of the restrictive covenants, which states: "No lot shall be used for any purpose except residential use."

¶4 In 1994, Micklon purchased Lot 6 of the subdivision. The Dudleys purchased Lots 3 and 4 in 2004. Lot 3 was a vacant field at the time. Situated on Lot 4 was a 2,000-square-foot, three-bedroom, two-bathroom house, with an attached two-car garage. After purchasing Lots 3 and 4, the Dudleys constructed what the District Court termed "a mammoth shop" on Lot 3. The court described the shop, which is the only structure on Lot 3, as follows:

2

> The shop is 50' x 60' feet, or 3,000 square feet, not counting a loft which adds approximately another 840 square feet of interior space. The shop is sided with steel and is windowless. Inside the building is located a 36' x 60' garage, a 14' x 20' office/TV room, a 10' x 14' bathroom, a 14' x 20' wood shop/parts room. The garage area is accessed from the outside by two 14' tall garage doors. One bay of the garage has a "walk under pit" to allow servicing a motor home from underneath, and the other bay has a hydraulic lift, which allows smaller vehicles to be hoisted into the air for servicing. The loft houses a "gun room," where Mr. Dudley loads ammunition and stores guns.

The court noted that "there is a fairly steady flow of traffic from friends dropping by the shop to visit and occasionally to have Mr. Dudley assist them in working on their vehicles." The court also noted that the area around the shop is landscaped with trees, shrubs, and a raised garden area.

¶5 On June 21, 2005, Micklon, along with George "Doc" Sargent and Patricia Sargent (who were the owners of Lot 2) filed suit in the District Court. They sought an order requiring the Dudleys to remove the shop from Lot 4 and permanently enjoining the Dudleys from violating the restrictive covenants.

¶6 On July 8, 2005, the Dudleys filed a motion to dismiss, which the District Court denied on August 31, 2005. The Dudleys subsequently filed an answer and counterclaim on September 19, 2005, asserting that Micklon and the Sargents were in violation of a number of the restrictive covenants themselves. The District Court held a bench trial on May 2, 2006, and issued its Findings of Fact, Conclusions of Law, and Judgment on May 4, 2006. The court noted that the Dudleys "have more vehicles than their attached two-car garage could possibly house." Specifically, the court found that the Dudleys had "at least three 'regular' vehicles, a large motor home, two ATVs, and a dune buggy." The

3

court also found that the shop was not serving a commercial purpose and that the shop qualified as a "residential use," given that the Dudleys were actively using the shop in conjunction with their residential dwelling on Lot 4. The court concluded, therefore, that the shop did not violate paragraph 6 of the restrictive covenants. The District Court also concluded that Micklon was not in violation of the restrictive covenants. This appeal by Micklon followed.[1]

## STANDARD OF REVIEW

¶7 We review a district court's findings of fact to determine whether the findings are clearly erroneous. M. R. Civ. P. 52(a); *Denton v. First Interstate Bank of Commerce*, 2006 MT 193, ¶ 18, 333 Mont. 169, ¶ 18, 142 P.3d 797, ¶ 18. A district court's findings are clearly erroneous if the findings are not supported by substantial credible evidence, if the court has misapprehended the effect of the evidence, or when a review of the record leaves this Court with a definite and firm conviction that a mistake has been made. *Denton*, ¶ 18.

¶8 We review a district court's conclusions of law to determine whether the district court's interpretation and application of the law is correct. *Sunday v. Harboway*, 2006 MT 95, ¶ 17, 332 Mont. 104, ¶ 17, 136 P.3d 965, ¶ 17; *In re A.N.W.*, 2006 MT 42, ¶ 28, 331 Mont. 208, ¶ 28, 130 P.3d 619, ¶ 28.

---

[1] In its pretrial order dated April 13, 2006, the District Court stated that "Plaintiff Sargent has sold his lot and no longer has standing to be a party Plaintiff," and in its Findings of Fact, Conclusions of Law, and Judgment, the court noted that "[Sargent] is no longer a party to the lawsuit." Presumably, the court's reference to "Sargent" includes both George "Doc" Sargent and Patricia Sargent. In any event, we note that neither of the Sargents is a party to the instant appeal.

**DISCUSSION**

¶9 ***Did the District Court err in concluding that the shop on the Dudleys' lot did not violate the subdivision's restrictive covenant mandating that "[n]o lot shall be used for any purpose except residential use"?***

¶10 When interpreting documents containing restrictive covenants, we apply the same rules of construction as are applied to contracts. *Milltown Addition Homeowner's Ass'n v. Geery*, 2000 MT 341, ¶ 11, 303 Mont. 195, ¶ 11, 15 P.3d 458, ¶ 11. We read the restrictive covenants as a whole in order to ascertain their meaning. *Newman v. Wittmer*, 277 Mont. 1, 6, 917 P.2d 926, 929 (1996); § 28-3-202, MCA. Furthermore, the language of the covenants is to be understood in its ordinary and popular sense. *Hillcrest Homeowners Ass'n v. Wiley*, 239 Mont. 54, 56, 778 P.2d 421, 423 (1989); § 28-3-501, MCA. At the same time, however, restrictive covenants are to be strictly construed. *Higdem v. Whitham*, 167 Mont. 201, 208-09, 536 P.2d 1185, 1189-90 (1975) (observing that "[t]he overriding policy of individual expression in free and reasonable land use dictates that restrictions should not be aided or extended by implication or enlarged by construction").

¶11 Where the language used is plain and unambiguous, the language governs our interpretation. *Milltown*, ¶ 11. Here, there is no serious contention that the language of paragraph 6, "no lot shall be used for any purpose except residential use," is ambiguous. The Dudleys refer to this language at one point as "vague"; however, they offer no argument that the language is "susceptible to at least two reasonable but conflicting meanings." *See Mary J. Baker Revoc. Trust v. Cenex Harvest,* 2007 MT 159, ¶ 20, 338 Mont. 41, ¶ 20, 164 P.3d 851, ¶ 20. Accordingly, we will proceed to apply the language

5

as written.  In this regard, we note that the construction and interpretation of paragraph 6 is a question of law.  *See Baker Revoc. Trust*, ¶ 19.

¶12    Micklon offers a sole argument in support of his claim that the District Court erred in concluding that the Dudleys' shop did not violate paragraph 6:  Based on our holding in *Hillcrest*, a shop built on a lot, *without a dwelling house on the same lot*, violates a restrictive covenant limiting the lot's use to residential purposes.  Micklon contends that *Hillcrest* leaves no "wiggle room" for the District Court to conclude that the Dudleys' shop did not violate paragraph 6.  The Dudleys respond that the District Court correctly determined that their shop was residential in use and that substantial evidence existed at the time of trial to support this finding.  The Dudleys claim that the shop is "an important and continually used residential building to the Dudleys."

¶13    In support of its conclusion that the Dudleys' shop did not violate paragraph 6, the District Court cited and discussed two cases in which this Court held that structures similar to the Dudleys' shop *did* violate restrictive covenants—*Hillcrest* and *Tipton v. Bennett*, 281 Mont. 379, 934 P.2d 203 (1997).  In *Hillcrest*, the defendants constructed a steel-sided garage on their subdivision lot and the homeowners' association sued to enforce a restrictive covenant stating "[n]o lot shall be used except for single family residential purposes, only one residence per lot and no lot shall be subdivided." *Hillcrest*, 239 Mont. at 55, 778 P.2d at 422.  Although the defendants planned on constructing a residence on the lot in addition to the garage, this was never accomplished. *Hillcrest*, 239 Mont at 55, 778 P.2d at 422.  In light of the covenant restricting lot usage to "single family residential purposes," we concluded that "a garage, by itself, is not consistent with

'single family residential purposes' when the garage is not used in conjunction with a residential dwelling" on the same lot and that the defendants had violated the restrictive covenants by building the garage and then failing to build, within a reasonable time thereafter, a residential dwelling to accompany the garage. *Hillcrest*, 239 Mont. at 57, 778 P.2d at 423. In reaching this conclusion, we observed that "courts have held that a garage built on a lot without a dwelling house *on the same lot* violates a restrictive covenant when the covenant specifically limits a lot's use to 'residential purposes.' " *Hillcrest*, 239 Mont. at 56, 778 P.2d at 423 (emphasis added). We then quoted, with approval, the following passage from a Washington Court of Appeals case:

> "A private garage is a proper appurtenance necessary to the enjoyment of a dwelling house and does not violate a 'for residence purposes only' covenant [cites omitted]. However, if the garage is placed on an adjoining lot, it is no longer deemed to be appurtenant and does violate such a restriction even though used in connection with a residence on an adjoining lot [cites omitted]."

*Hillcrest*, 239 Mont at 57, 778 P.2d at 423 (alterations in original) (quoting *Sandy Point Improvement Co. v. Huber*, 613 P.2d 160, 163 (Wash. App. 1980)).

¶14      In *Tipton*, the defendants purchased six lots and constructed a 3,200-square-foot storage building on one of the lots. *Tipton*, 281 Mont. at 380, 934 P.2d at 204. The plaintiffs sued, claiming the structure violated a restrictive covenant requiring "[t]hat the real property hereof shall be used strictly for residential purposes and no business, trade or manufacture of any sort or nature shall be conducted thereon." *Tipton*, 281 Mont. at 380, 934 P.2d at 204. While the defendants described the building as a large garage, the district court found that "it looked like a storage building rather than a residential

7

garage." *Tipton*, 281 Mont. at 381, 934 P.2d at 204.  In *Tipton*, we took into account *Hillcrest* and *Sandy Point* and affirmed the district court's conclusion that the storage building violated the restrictive covenant.  *Tipton*, 281 Mont. at 382-83, 934 P.2d at 205.  Specifically, we stated:

> With or without a residence, a 3,200 square foot storage building is not an appurtenance necessary to the enjoyment of a dwelling house. The building violates the covenant, not only because it stands alone without a dwelling, but also due to the fact that a 3,200 square foot storage building is not consistent with "residential purposes."

*Tipton*, 281 Mont. at 383, 934 P.2d at 206.  Thus, under *Hillcrest*, *Tipton*, and the language of paragraph 6, the Dudleys' shop had to be an appurtenance necessary to the enjoyment of a dwelling house and, in addition, had to be located on the same lot as that dwelling house.

¶15    The District Court, however, viewed the dispositive issue somewhat differently. Specifically, given our statement in *Hillcrest* that "a garage, by itself, is not consistent with 'single family residential purposes' when the garage is not used *in conjunction with* a residential dwelling," *Hillcrest*, 239 Mont. at 57, 778 P.2d at 423 (emphasis added), and our statement in *Tipton* that "a 3,200 square foot storage building is not *an appurtenance necessary to the enjoyment of a dwelling house*," *Tipton*, 281 Mont. at 383, 934 P.2d at 206 (emphasis added), the District Court stated that "[t]he question here is whether the Dudleys' use of lot 3 is sufficiently different from the uses [at issue in *Hillcrest* and *Tipton*] to justify a different result."  In this regard, the court determined that the Dudleys' shop was "actively incorporated into the Dudleys' daily routine" and "there is nothing in the covenants to prevent the Dudleys from owning many vehicles and from

8

having a state of the art facility in which to service those vehicles." On this basis, the court concluded that the Dudleys' shop was "actively 'used in conjunction with a residential dwelling' " (quoting *Tipton*, 281 Mont. at 382, 934 P.2d at 205), and, thus, was "an appurtenance" to the Dudleys' residence. The court acknowledged that the Dudleys' shop was nearly the same size as the storage building in *Tipton*, but the court distinguished the shop as being "not just an amorphous 'large storage building' " (quoting *Tipton*, 281 Mont. at 382, 934 P.2d at 205). Thus, the court concluded that the shop did not violate the "residential use" restriction contained in paragraph 6.

¶16    However, in reaching this conclusion, the District Court overlooked our agreement, in *Hillcrest*, with the following two rules of law: "a garage built on a lot without a dwelling house *on the same lot* violates a restrictive covenant when the covenant specifically limits a lot's use to 'residential purposes,' " *Hillcrest*, 239 Mont. at 56, 778 P.2d at 423 (emphasis added), and a garage that is used in connection with a residence is not appurtenant to that residence " 'if the garage is placed *on an adjoining lot*,' " *Hillcrest*, 239 Mont at 57, 778 P.2d at 423 (emphasis added) (quoting *Sandy Point*, 613 P.2d at 163). Here, the Dudleys' shop stood alone on Lot 3, while their residential dwelling was located on the adjoining Lot 4. Under the rules set out in *Hillcrest*, this is a plain violation of paragraph 6, which states: "No lot shall be used for any purpose except residential use."

¶17    The District Court's contrary conclusion that the Dudleys' shop had a "residential use" rested entirely on the shop's association with the Dudleys' residential dwelling; in other words, the court made no finding that the shop, on its own, served a residential

9

purpose. However, under *Hillcrest,* because the shop was located on its own lot without an accompanying dwelling, it had to serve a residential purpose independent of the Dudleys' dwelling on an adjoining lot.[2] Accordingly, we reject the Dudleys' argument that because their 3,000-square-foot shop is used in conjunction with their residential dwelling—though admittedly located on an adjoining lot—their situation is distinguishable from that in *Hillcrest* and warrants a different result.

¶18    In short, we conclude that the District Court erred in its determination that the Dudleys' shop does not violate paragraph 6 of the restrictive covenants limiting lot use to "residential use."

**CONCLUSION**

¶19    We hold that when a restrictive covenant limits a subdivision lot's use to "residential use," a non-residential structure that is placed on that lot without an accompanying residential dwelling on the same lot violates the covenant, notwithstanding the fact that the structure is used in conjunction with a residential dwelling on an adjoining lot. Accordingly, because the Dudleys' shop was constructed on a lot unaccompanied by a dwelling house on the same lot, the District Court erred in concluding that the shop did not violate the subdivision's restrictive covenant limiting all lots to "residential use."

¶20    Reversed.

---

[2] We note, in this regard, that paragraph 3 of the restrictive covenants states: "No basement, tent, shack, garage, barn, log house, mobile home or other outbuilding shall be erected at any time to be used as a residence."

/S/ JAMES C. NELSON


We Concur:

/S/ KARLA M. GRAY
/S/ PATRICIA COTTER
/S/ W. WILLIAM LEAPHART
/S/ JOHN WARNER