**FILED**

November 27 2009

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

DA 08-0299

IN THE SUPREME COURT OF THE STATE OF MONTANA

2009 MT 410

CRAIG McKAY and LISA McKAY, Husband and Wife,

       Plaintiffs, Appellees, and Cross-Appellants,

    v.

WILDERNESS DEVELOPMENT, LLC,

       Defendant, Appellant, and Cross-Appellees.

APPEAL FROM:    District Court of the Nineteenth Judicial District,
In and For the County of Lincoln, Cause No. DV-07-158
Honorable Michael C. Prezeau, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

         Sean S. Frampton, Morrison & Frampton, PLLP, Whitefish, Montana

      For Appellees:

         Amy N. Guth, Attorney at Law, Libby, Montana

            Submitted on Briefs: August 5, 2009

                Decided: November 27, 2009

Filed:

         _____
                    Clerk

Justice John Warner delivered the Opinion of the Court.

¶1 Craig and Lisa McKay brought suit against Wilderness Development, LLC (Wilderness), in the District Court of the Nineteenth Judicial District Court, Lincoln County, alleging it had violated restrictive covenants attached to the Koocanusa Estates Subdivision near Eureka, Montana (Subdivision). The McKays also alleged that Wilderness had trespassed on their property and converted some of their trees. The District Court granted partial summary judgment to the McKays, holding that Wilderness had violated a restrictive covenant. A Lincoln County jury found that the McKays had suffered $350,000 in damages for violation of the restrictive covenant. The jury also found that Wilderness had converted trees owned by the McKays with a value of $6,500, and that it was not liable for trespass. The jury also awarded $1,000,000 in punitive damages. The District Court reduced the punitive damage award to $25,000 and entered judgment in favor of the McKays. Wilderness appeals the judgment and the McKays cross-appeal. We affirm in part, reverse in part, and remand for further proceedings consistent with this Opinion.

¶2 Wilderness raises eight issues on appeal, which we restate as follows:

¶3 Issue 1: Did the District Court err in holding that waiver and laches did not bar the McKays from enforcing restrictive covenants?

¶4 Issue 2: Did the District Court err in precluding Wilderness from offering evidence that the McKays failed to object in advance of construction of the maintenance building?

2

¶5     Issue 3: Did the District Court err in its instruction to the jury concerning recovery of damages for emotional distress?

¶6     Issue 4: Is there sufficient evidence to support the jury's award of damages for breach of the restrictive covenant prohibiting the construction of a commercial building?

¶7     Issue 5: Did the District Court err in holding that Wilderness does not have an easement across the McKays' property?

¶8     Issue 6: Is there sufficient evidence to support the jury's award of damages for conversion?

¶9     Issue 7: Was the jury verdict reached under the influence of passion and prejudice?

¶10    Issue 8: Is there sufficient evidence to establish malice, which is required to award punitive damages?

¶11    The McKays raise an issue on cross-appeal which we restate as follows:

¶12    Issue 9: Did the District Court err in reducing the punitive damage award?

¶13    In addition, the McKays raise alternative issues on cross-appeal should this Court reverse the District Court judgment:

¶14    Issue 10: Did the District Court err in refusing to require Wilderness to remove a maintenance building it erected in violation of a restrictive covenant?

¶15    Issue 11: Did the District Court err in not enforcing a restrictive covenant prohibiting further division of a lot Wilderness owns in the Subdivision?

# BACKGROUND

¶16   In 1979, the Koocanusa Estates Subdivision was created. The Subdivision was made subject to covenants which restrict use of the property to "single-family residential or agricultural purposes" and which prohibit "further subdivision of the parcels." Lot 4A in the Subdivision was platted as a 20-acre lot. Despite the restrictions, Lot 4A was subdivided into two 10-acre parcels in 2000 at the McKays' request, and the McKays then purchased the southerly 10 acres of Lot 4A. Later, the McKays purchased the neighboring 20-acre Lot 5A, which is not involved in this dispute.

¶17   Wilderness purchased approximately 500 acres of land to the north of the McKays' part of Lot 4A, including 50 acres within the Subdivision. As a part of this purchase, Wilderness acquired the northern 10 acres of Lot 4A. Thus, Wilderness and the McKays share a common boundary, with Wilderness owning the northern 10 acres of Lot 4A and the McKays owning the southern 10 acres.

¶18   At the time Lot 4A was divided and the McKays purchased its southern 10 acres, the division left the owner of the northern 10 acres with no access to his portion of Lot 4A other than across the McKays' property, or across a road which he had no legal right to use.

¶19   Wilderness is developing a residential community and golf course on its 500 acres, including the 50 acres it owns within the Subdivision. In May of 2007, Wilderness began clearing trees on the western boundary of the McKays' property, where it claims it has a

4

road easement. It cleared an area 150-feet-long and 33-feet-wide along the western boundary of the McKays' portion of Lot 4A, removing over 100 trees.

¶20 The McKays filed suit in June 2007 to enjoin the construction of the road and for damages for trespass and conversion.

¶21 Wilderness' plans for the golf course include the construction of a maintenance facility located on the northerly part of Lot 4A, adjacent to the McKays. Wilderness also planned to further divide the northerly portion of Lot 10A into four separate parcels. In August 2007, Wilderness poured the foundation for the maintenance facility. The McKays then amended their complaint to pray for a permanent injunction against the alleged violations of the covenants by Wilderness, including the construction of the maintenance facility, and the further division of the northerly portion of Lot 4A. The McKays also prayed for punitive damages.

¶22 The parties moved for summary judgment on three issues: Wilderness' right to access its property by constructing a road across the western boundary of the McKays' property; whether the McKays could enforce the restrictive covenant prohibiting the construction of the maintenance building; and whether the McKays could enforce the restrictive covenant prohibiting further division of the northerly portion of Lot 4A. The District Court ruled that Wilderness has no legal right to access its property through the McKays' property. The District Court also ruled that the covenant restricting further subdivision was unenforceable in light of the McKays' own violation of that covenant. Finally, the District Court held as a matter of law that the McKays could enforce the

5

restrictive covenant that prohibited Wilderness from building a commercial maintenance facility to service its golf course on the northerly portion of Lot 4A. The District Court denied the McKays' prayer for an injunction requiring that the maintenance building be removed. Rather than order the building removed, the District Court ordered that a jury would determine the amount of money damages the McKays had suffered because of the violation of the restrictive covenant. The District Court also ordered a jury trial to decide if Wilderness committed a trespass on the McKays' property, had converted the McKays' trees, and had acted with malice justifying punitive damages. The jury would also determine the amount of any damages.

¶23 The case was tried to a Lincoln County jury on April 1-4, 2008. The jury fixed the amount of damages suffered by the McKays for violation of the restrictive covenant at $350,000. The jury concluded that Wilderness did not trespass on the McKays' property. However, the jury found that Wilderness had converted the McKays' trees and awarded $6,500 as damages for the conversion. The jury also awarded the McKays $1,000,000 in punitive damages.

¶24 Following the verdict, Wilderness moved the District Court to strike the punitive damage award and to grant a new trial. The District Court did not rule on Wilderness' motion to strike and denied Wilderness' Motion for a New Trial. The District Court then reviewed the amount of punitive damages and reduced the award to $25,000. Wilderness now appeals and the McKays cross-appeal. Further facts relating to the several issues presented will be discussed as necessary.

6

**DISCUSSION**

¶25    *Issue 1: Did the District Court err in holding that waiver and laches did not bar the McKays from enforcing restrictive covenants?*

¶26    We review a district court's consideration of the grant or denial of summary judgment de novo. *Prosser v. Kennedy Enterprises, Inc.*, 2008 MT 87, ¶ 10, 342 Mont. 209, 179 P.3d 1178.

¶27    Wilderness sought approval of its development by Lincoln County. The approval process required submission of plans detailing the development. Public hearings were held concerning these plans. The McKays did not attend the public hearings and made no objection to the maintenance building during the approval process. Wilderness argues that the District Court erred in denying its motion for summary judgment, that the McKays had waived their right to enforce the restrictive covenant preventing the construction of the maintenance building because its location was shown on the development plans which were available to the public. Wilderness claims that the McKays were aware of the building's proposed construction, and they neither attended the public hearings nor made any objection during the approval process.

¶28    Waiver is a voluntary and intentional relinquishment of a known right or claim. It may be proven by express declarations or by a course conduct which induces the belief that the intent and purpose was waiver. To establish a waiver, the party asserting waiver must demonstrate that the other party knew of the existing right, acted inconsistent with

7

that right, and prejudice resulted to the party asserting waiver. *Edwards v. Cascade County*, 2009 MT 229, ¶ 30, 351 Mont. 360, 212 P.3d 289 (citations omitted).

¶29 As noted by the District Court, M. R. Civ. P. 8(c) requires that a defense of waiver be affirmatively pled. Wilderness did not plead waiver as a defense and the District Court correctly denied the motion for summary judgment on this basis.

¶30 The District Court further denied Wilderness' motion for summary judgment based on a portion of the restrictive covenants which states in pertinent part:

> The failure of Declarants, their successors or assigns, or any owner of any parcels to enforce such conditions, restrictions or covenants herein contained shall in no way be deemed a waiver of right to enforce such conditions, restrictions or covenants hereafter.

¶31 Considering this statement in the covenants, we agree with the District Court that the McKays did not knowingly, voluntarily, and intentionally relinquish their right to object to the large maintenance building being built next to their home.

¶32 Wilderness also argues that the doctrine of laches prevents the McKays from enforcing the restrictive covenant against construction of the golf course maintenance facility.

¶33 Laches is a concept of equity that can apply when persons are negligent in asserting a right, and where there has been an unexplained delay of such duration or character as to render the enforcement of the asserted right inequitable. *Edwards*, ¶ 32; *Kelleher v. Board of Social Work Examiners,* 283 Mont. 188, 191, 939 P.2d 1003, 1005 (1997).

¶34 There is no certain time limit within which persons must assert their rights before the doctrine of laches applies. Nevertheless, when an action to enforce a right is filed within the applicable period of limitations, the party asserting the defense of laches must show that extraordinary circumstances exist which require its application. *McGregor v. Mommer*, 220 Mont. 98, 107, 717 P.2d 536, 542 (1986).

¶35 In an action of an equitable nature, we review independently all questions of fact as well as questions of law. We uphold the district court's findings of fact if they are not clearly erroneous. Section 3-2-204(5), MCA; *Edwards*, ¶ 32.

¶36 The District Court found that there was a relatively short delay between the time the McKays learned that a large maintenance building would be built next to their house and the time they filed suit to stop its construction. The District Court found the delay was simply not long enough to invoke the equitable doctrine of laches. In addition, the District Court found that any prejudice to Wilderness was mitigated by not requiring the building to be removed. These findings are supported by the record.

¶37 The McKays filed this action to enforce the restrictive covenant within the period of limitations to enforce a written contract. The delay was, as found by the District Court, relatively short. We conclude that the District Court did not err in concluding that the restrictive covenant against construction of its maintenance building was neither waived by the McKays, nor barred by laches.

¶38    *Issue 2: Did the District Court err in precluding Wilderness from offering evidence that the McKays failed to object in advance of construction of the maintenance building?*

¶39    Wilderness sought to introduce evidence that the McKays made no objection to the construction of the maintenance building in violation of the restrictive covenants until they filed this suit. Wilderness argued in the District Court, and argues on appeal, that this evidence is relevant and admissible concerning whether it acted with malice and whether the McKays suffered emotional distress damages. The District Court excluded such evidence based on M. R. Evid. 403, which provides that relevant evidence may be excluded if its probative value is outweighed by danger of unfair prejudice, confusion of the issues, or misleading the jury.

¶40    We review a district court's evidentiary rulings for an abuse of discretion. A district court abuses its discretion when it acts arbitrarily without conscientious judgment or exceeds the bounds of reason. *Anderson v. Woodward*, 2009 MT 144, ¶ 13, 350 Mont. 343, 207 P.3d 329; *State v. Stearns*, 2008 MT 356, ¶ 13, 346 Mont. 348, 195 P.3d 794. Evidence, although relevant, may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. M. R. Evid. 403. The decision whether or not to exclude such evidence will not be reversed by this Court unless the district court has abused its discretion. *Mauer v. Clausen Distributing Co.*, 275 Mont. 229, 238, 912 P.2d 195, 200 (1996) (citing *Newville v. State, Dept. of Family Svcs.*, 267 Mont. 237,

10

260, 883 P.2d 793, 806 (1994); *Kimes v. Herrin*, 217 Mont. 330, 333, 705 P.2d 108, 110 (1985)).

¶41 The District Court found that evidence the McKays had knowledge of, but did not object to the maintenance building before its construction was commenced, was only marginally relevant. The District Court concluded that such evidence could be confusing and unduly prejudicial because the jury could easily rely on it to decide that the McKays had waived their right to object. The District Court noted in a written order that its refusal to permit Wilderness to cross-examine Craig McKay pertaining to his knowledge of the planning of the golf course development, the meetings the McKays may or may not have attended, and written objections which may or may not have been filed or other action or inaction by the McKays, did not prevent Wilderness from presenting evidence concerning why it felt justified in taking the actions it took. In other words, the District Court did not prevent Wilderness from presenting evidence of why it built the maintenance building where it did.

¶42 We do not disagree with the District Court that the evidence at issue could confuse the jury. And, as Wilderness was not precluded from presenting evidence of why it built the maintenance building where it did, the probative value of the evidence of what the McKays did or did not do is not high. The District Court carefully stated its reasons for excluding the evidence at issue, and we conclude that it did not abuse its discretion.

¶43 *Issue 3: Did the District Court err in its instruction to the jury concerning recovery of damages for emotional distress?*

11

¶44    The McKays did not allege in their amended complaint that they had suffered emotional distress because of the construction of the maintenance building on the northerly portion of Lot 4A.

¶45    In the pretrial order, which supersedes the pleadings, the McKays did not specifically claim damages for emotional distress, but listed as a contention that "they have lost security in their surroundings and the peaceful enjoyment of their residence which was a foreseeable consequence of [Wilderness'] violation of the covenants." There is no allegation in the amended complaint or contention in the pretrial order that Wilderness committed the tort of negligently or intentionally causing the McKays to suffer emotional distress.

¶46    In discovery, Lisa McKay stated in her deposition that she had been through a lot of emotional distress.  After the pretrial order was entered by the District Court, Wilderness filed a motion *in limine* to preclude the McKays from claiming damages for emotional distress.  Citing *Sacco v. High Country Press*, 271 Mont. 209, 896 P.2d 411 (1995), Wilderness argued that the McKays could not recover damages for emotional distress because neither of the McKays had received any medical care as the result of their claim for trespass and, as a matter of law, any emotional distress was not sufficiently severe to merit an award of damages.

¶47    On the first day of trial, just before voir dire was commenced, the District Court, without accepting argument, denied the motion *in limine*, concluding "there are cases that say emotional damages are available for real estate claims."  The presiding judge also

12

commented that *Sacco v. High Country Press* dealt with causes of action for intentional or negligent infliction of emotional distress.

¶48    At trial, Lisa McKay testified that the emotional distress caused by Wilderness affected her memory and made her very emotional. Craig McKay testified that he lost his privacy and that Lisa McKay has problems sleeping and problems with her memory as a result of Wilderness building a large commercial building next to their home. Neighbors of the McKays testified that the construction of the maintenance building had caused the McKays emotional distress.

¶49    During the discussion of the trespass instruction proposed by Wilderness, the trial judge rejected Wilderness' proposed instruction and advised that he had drafted instructions relating to trespass, one of which, inter alia, stated that in the event the jury determined that the McKays had been damaged by a trespass, one of the elements of damage to which they would be entitled is "(3) discomfort and annoyance caused by the trespass." When the judge proposed to so instruct the jury, the following exchange occurred:

> THE COURT: So, Mr. Frampton, since we are dealing with your instruction, do you have an objection to that?
>
> MR. FRAMPTON [Wilderness' counsel]: Similar objection as before. Just element no. 3, just that the amount of damages, I believe should be limited to the property. But the Court has already ruled…
>
> THE COURT: Oh, I see.
>
> MR. FRAMPTON: They are entitled to emotional damages.
>
> THE COURT: Emotional distress.

13

MR. FRAMPTON: So I will maintain my objection.

THE COURT: All right. Just for the record then, previously Wilderness has claimed that emotional distress damages are not available on a claim for damage to real property. And I have indicated that I don't agree with that. Ms. Guth, do the Plaintiffs have an objection to Court's proposed no. 1?

MS. GUTH [McKays' counsel]: No.

THE COURT: Okay. 1 will be given then over the objection of Wilderness.

The instruction drafted by the trial judge was given to the jury as Court's Instruction No. 12.[1] The McKays submitted proposed jury instructions relating to damages for emotional distress that were designed to be used when a plaintiff claims that the defendant committed the tort of intentionally or negligently causing severe emotional distress. The McKays' proposed instruction No. 34 would have required the jury to find that any emotional distress suffered was severe before awarding damages, as is required by *Sacco*. When the District Court noted that intentional or negligent infliction of severe emotional distress had not been pled by the McKays, these instructions were withdrawn by the McKays' counsel.

¶50 Instruction No. 17 only addresses the "defendant's violation of the covenant relating to the maintenance building." The District Court instructed the jury in considering damages, "any award should include reasonable compensation for any mental and emotional suffering and distress experienced by the plaintiffs and reasonably probable to be experienced in the future." Instruction No. 17 closely parallels Mont.

---

[1] The jury found that Wilderness did not trespass on the McKays' property.

14

Pattern Jury Instr. 2d ed. 25.02. Counsel for Wilderness voiced no objection to this specific instruction. However, the District Court had already ruled that emotional distress damages for damage to real property would be allowed.

¶51    The jury returned its verdict that the McKays had sustained damages of $350,000 as a result of Wilderness' violation of the restrictive covenant against using its property for commercial purposes.

¶52    Wilderness filed a motion for a new trial arguing that the District Court had made several erroneous rulings, one of which was instructing the jury that the McKays were entitled to emotional distress damages for violation of the restrictive covenant prohibiting construction of the maintenance building. In its motion Wilderness, for the first time, cited § 27-1-310, MCA, which prohibits emotional distress damages in a contract action.[2] Wilderness also reiterated its argument that the holding in *Sacco*, particularly that emotional distress damages are not allowed absent severe emotional distress, applied to this case. The District Court denied the motion for a new trial.

¶53    On appeal, Wilderness argues that, considering the pleadings and evidence, the McKays are not entitled to damages for emotional distress. The McKays respond that the District Court was correct that emotional distress damages may be recovered in an action for breach of a restrictive covenant attached to the land, and in any event, Wilderness

---

[2]  In the motion for new trial, Wilderness argued that state law precludes damages for emotional distress in contract actions. Section 27-1-310, MCA, provides: In an action for breach of an obligation or duty arising from contract, recovery is prohibited for emotional or mental distress, except in those actions involving actual physical injury to the plaintiff. This objection was not properly preserved at trial and thus not considered here.

15

waived its argument that such is not the case because it was not timely presented to the District Court.

¶54 The District Court's determination that the McKays were entitled to emotional distress damages for violation of the covenant prohibiting construction of the maintenance facility is a conclusion of law. Our review of conclusions of law is plenary. *In re Marriage of Guffin*, 2009 MT 169, ¶ 6, 350 Mont. 489, 209 P.3d 225.

¶55 The District Court was at least partially correct when it stated that there are Montana cases relating to real estate in which damages for emotional distress have been affirmed. *See Maloney v. Home and Investment Center, Inc.*, 2000 MT 34, ¶ 68, 298 Mont. 213, 994 P.2d 1124 (emotional distress damages may result from negligent or intentional interference with the acquisition of land where plaintiffs were devastated by a sudden impact of a sale to someone else and suffered intense emotional hardship); *French v. Ralph E. Moore, Inc.*, 203 Mont. 327, 661 P.2d 844 (1983) (affirming award of damages to plaintiffs for "pain, discomfort, fears, anxiety, annoyance, inconvenience and other mental, physical and emotional distress suffered by plaintiffs as a result of the invading gasoline vapors" produced by negligent contamination of plaintiff's business and home); *Johnson v. Murray*, 201 Mont. 495, 507-08, 656 P.2d 170, 176-77 (1982) (affirming an award of compensatory damages that included compensation for humiliation, embarrassment, distress, and ridicule associated with the tortious imposition of a lien on the plaintiff's real property). However, in each of these cases, the plaintiffs

16

brought an action sounding in tort and claimed that emotional distress damages were suffered as a result of the defendants' tortuous conduct.

¶56 In *Jacobsen v. Allstate Ins. Co.*, 2009 MT 248, 351 Mont. 464, 215 P.3d 649, after acknowledging that there has been some confusion in Montana case law concerning the availability of damages for emotional distress, the Court held that when emotional distress is claimed as an element of damage for an underlying tort claim (parasitic emotional distress damages), the standard set forth in the Mont. Pattern Jury Instr. 2d ed. 25.02, which was given by the District Court in this case, is appropriate. *Jacobsen*, ¶ 66. We also held that the "serious or severe" standard announced in *Sacco* applies to independent claims of negligent or intentional infliction of emotional distress, not parasitic claims for emotional distress. *Jacobsen*, ¶ 66.

¶57 In this case, the McKays sued to enforce their rights under a restrictive covenant preventing Wilderness from constructing a commercial building on land next to their property. The rights created by restrictive covenants are contractual rights. *Reinke v. Biegel*, 185 Mont. 31, 35, 604 P.2d 315, 317 (1979); *Sheridan v. Martinsen*, 164 Mont. 383, 388, 523 P.2d 1392, 1395 (1974). In the absence of physical injury, damages for emotional distress are not allowed in an action to enforce a contract.

¶58 An independent tort action may be maintained for intentional infliction of emotional distress which relates to violation of a restrictive covenant. *Czajkowski v. Meyers*, 2007 MT 292, 339 Mont. 503, 172 P.3d 94. However, in this case, the McKays' suit to enforce the restrictive covenant is essentially a contract action and the McKays did

17

not bring an action seeking damages for intentional infliction of emotional distress. Instructing the jury by giving Montana Pattern Jury Instruction M.P.I.2d 25.02 was error.

¶59 The McKays argue that because Wilderness did not object to Instruction No. 17, and because it did not cite the District Court to § 27-1-310, MCA, until after the jury rendered its verdict, Wilderness' objection comes too late. However, Wilderness did file a motion *in limine* prior to trial, in which it argued that because neither of the McKays had sought or received medical treatment, emotional distress damages could not be recovered for violation of the covenant not to construct a commercial building. The District Court summarily denied the motion. Later, when counsel for Wilderness again objected to including emotional distress as an element of damages in connection with an instruction drafted by the District Court concerning trespass, the District Court made a record that even though Wilderness claimed that emotional distress damages are not available on a claim for damage to real property, the court did not agree. The record reflects that the District Court held the erroneous opinion that parasitic damages for emotional distress were available in an action to enforce a restrictive covenant. Under these singular circumstances, we conclude that Wilderness sufficiently preserved an objection to the District Court's jury instruction regarding emotional distress. *See State v. Harris*, 1999 MT 115, ¶ 30, 294 Mont. 397, 983 P.2d 881.

¶60 *Issue 4: Is there sufficient evidence to support the jury's award of damages for breach of the restrictive covenant prohibiting construction of a commercial building?*

¶61 At trial, Craig McKay presented the only evidence concerning the reduction in the

18

value of the McKays' property. He testified that the southerly portion of Lot 4A had a value of $300,000 before Wilderness built the maintenance building and cut the trees. He opined that these activities reduced the value of the property by 25%, which is $75,000. He said that cutting the trees caused 5% of the damage, which is $3,750. Craig McKay also testified that he lost $67,000 of anticipated income because someone shot his dogs and smeared feces in his daughter's bedroom, making him unable to return to his fishing job in Alaska. The jury was not asked to, and did not state how much of its award was for diminution in the value of the McKays' property and how much was for emotional distress.

¶62 The evidence is not sufficient to support the award of $350,000 in damages for violation of the covenant, absent damages for emotional distress. The jury was improperly instructed on the McKay's claim for emotional distress damages. We conclude that because of instructional error, the judgment must be reversed and remanded for a new trial on the issue of damages caused by Wilderness' violation of the covenant which prohibited construction of a commercial building on the northerly portion of Lot 4A.

¶63 While the McKays did not specifically plead a cause of action for intentional infliction of emotional distress, during discovery they claimed that the actions of Wilderness were intentional and did state that they had suffered emotional distress. In the pretrial order, they contended they "lost security in their surroundings and the peaceful enjoyment of their residence as a foreseeable consequence" of the covenant

19

violation. The McKays presented evidence that they had suffered emotional distress and offered instructions concerning intentional infliction of severe emotional distress. These instructions were withdrawn only after the District Court had made its erroneous rulings. Given the history and posture of this case, Wilderness could not allege surprise if a claim for intentional or negligent infliction of emotional distress was made after remand. Thus, we conclude that upon retrial, the McKays may amend their complaint to claim damages for intentional or negligent infliction of severe emotional distress.

¶64    *Issue 5: Did the District Court err in holding that Wilderness does not have an easement across the McKays' property?*

¶65    As noted in ¶ 19 above, Wilderness claims that it has an easement across the western edge of the McKays' property to access the northerly portion of Lot 4A. The District Court granted the McKays' motion for summary judgment, holding that such an easement does not exist. We review a district court's consideration of the grant or denial of summary judgment de novo. *Larchick v. Diocese of Great Falls-Billings*, 2009 MT 175, ¶ 46, 350 Mont. 538, 208 P.3d 836.

¶66    Among other reasons, Wilderness claims it has such an easement because when the predecessor in title to the McKays, Mr. Miyamoto, conveyed the southerly half of Lot 4A to them and retained the northerly half of Lot 4A, he had no remaining access to the half of the lot that he retained. Thus, an implied easement by necessity arose across the McKays' property.

20

¶67   An easement by necessity exists over the lands of the grantor where an owner of land conveys a parcel which has no outlet to a highway except over the remaining lands of the grantor or over the land of strangers. *Watson v. Dundas*, 2006 MT 104, ¶ 33, 332 Mont. 164, 136 P.3d 973; *Hoyem Trust v. Galt*, 1998 MT 300, ¶ 18, 292 Mont. 56, 968 P.2d 1135. An implied easement by necessity requires two elements: (1) unity of ownership, and (2) strict necessity at the time that the unified tracts were separated. *Hoyem Trust*, ¶ 18.

¶68   Prior to being divided, the entirety of the 20-acre Lot 4A was owned by Miyamoto. The District Court correctly found that this satisfied the unity of ownership requirement of an easement by necessity. But, the District Court concluded that the element of strict necessity was not satisfied because at the time Miyamoto severed the southern half of Lot 4A, he was able to access the northern half of the lot by use of a road called the Chapman Road, which connected to a public highway. The record shows that at the time Lot 4A was divided, Miyamoto did not have a right to use the Chapman Road, nor did he have any other access of right to the half of Lot 4A which he retained. At the time unity of ownership was severed, the north half of Lot 4A lacked access to a public road for ingress and egress. Therefore, a strict necessity existed. Consequently, an easement by necessity arose.

¶69   The District Court erred in granting the McKays' motion for summary judgment claiming that Wilderness does not have an easement by necessity across the western boundary of Lot 4A. The location, permissible use, and width of such easement could be

21

the subject of further litigation on remand. *See Schmidt v. Pastor*, 2009 MT 280, 352 Mont. 178, 216 P.3d 192. Because we conclude that Wilderness has an implied easement by necessity, it is not necessary to discuss the other theories under which it claims an easement.

¶70   *Issue 6: Is there sufficient evidence to support the jury's award of damages for conversion?*

¶71   Wilderness claims that the evidence does not support damages of $6,500 found by the jury to be the value of the trees cut on the McKays' property.

¶72   In the District Court's Instruction No. 14, the jury was given the elements that the McKays were required to prove to establish the tort of conversion. The instruction states that one of the elements of conversion that a plaintiff must prove is damages. The jury was not given instruction on how to determine the amount of any damages suffered for conversion of the trees. Counsel for the McKays acknowledged on the record at the time that instructions were settled that as far as the trees go, there were not "many damages at all."

¶73   The detriment caused by a wrongful conversion is presumed to be:

(a) the value of the property at the time of its conversion with the interest from that time or, when the action has been prosecuted with reasonable diligence, the highest market value of the property at any time between the conversion and the verdict without interest, at the option of the injured party; and
(b) a fair compensation for the time and money properly expended in pursuit of the property.

Section 27-1-320(1), MCA.

¶74 In their brief on appeal, the McKays state on cross-examination that Craig McKay testified that the damage associated with the tree removal was $6,633. However, no citation to the record is given as is required by M. R. App. P. 12(2). The only evidence of the value of the trees is the testimony of Craig McKay that the value of the trees converted is $600, as noted by Wilderness. A judgment for damages must be supported by evidence. *In re Marriage of Mease*, 2004 MT 59, ¶ 42, 320 Mont. 229, 92 P.3d 1148; *Cremer v. Cremer Rodeo Land & Livestock Co.*, 192 Mont. 208, 214, 627 P.2d 1199, 1202 (1981). The amount of the damage suffered by the McKays for conversion of their trees must be reduced to that which the evidence will sustain, which is $600. *Kiely Const., LLC v. City of Red Lodge*, 2002 MT 241, ¶ 102, 312 Mont. 52, 57 P.3d 836.

¶75 *Issue 7: Was the jury verdict reached under the influence of passion and prejudice?*

¶76 Wilderness argues that they are entitled to a new trial because the McKays' trial strategy involved appealing to the jury's passion and prejudice by making veiled "home town" arguments. They argue this led to an excessive verdict not supported by the evidence. According to Wilderness, the only explanation for the jury's large verdict is passion and prejudice on the part of the jury.

¶77 A new trial may be granted where excessive damages appear to have been awarded under the influence of passion or prejudice. Section 25-11-102(5), MCA. This Court's scope of review of jury verdicts is limited. The amount of a damage award is properly left to the jury. This Court will not substitute its judgment for that of the jury--

23

particularly where, as here, the District Court has approved the verdict by denying a new trial. Only when the amount awarded is so grossly out of proportion to the injury as to shock the conscience will an appellate court intervene. *Frisnegger v. Gibson*, 183 Mont. 57, 67, 598 P.2d 574, 580 (1979).

¶78    The record shows that the jury believed that the deliberate actions of Wilderness substantially reduced the value of the McKays' property and that the McKays have suffered a great deal of emotional distress. After a review of the record, we conclude that the amount of damages assessed does not shock the conscience of the Court. Further, most of the damage award is vacated by this Opinion. Thus, it is unnecessary to discuss this issue further.

¶79    *Issue 8: Is there sufficient evidence to establish malice, which is required to award punitive damages?*

¶80    Reasonable punitive damages may be awarded when the defendant has been found guilty of actual fraud or actual malice. Section 27-1-221, MCA. Upon proof that Wilderness had knowledge of facts, or intentionally disregarded facts, that created a high probability of injury to the McKays and deliberately proceeded to act in a conscious or intentional disregard of the high probability of injury to the McKays, then Wilderness may be found to be guilty of actual malice. Section 27-1-221(2)(a), MCA. All elements in a claim for punitive damages must be proved by clear and convincing evidence, meaning that there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence. Section 27-1-221(5), MCA.

24

¶81 The jury was transported to the McKays' property and viewed both the maintenance building and the swath of trees that Wilderness removed along the western boundary of the McKays' property. The jury heard testimony about the conversion of the trees. The McKays testified that Wilderness deliberately misinformed the McKays regarding the cutting of the trees. Upon our review of the record, we conclude that Wilderness went about the development of its golf course in such a way that the jury could find, by clear and convincing evidence, that its conduct was malicious as defined by § 27-1-221, MCA.

¶82 *Issue 9 [Cross-Appeal]: Did the District Court err in reducing the punitive damage award?*

¶83 The jury determined that the McKays were entitled to punitive damages in the amount of $1,000,000. Upon consideration of the punitive damage award, as required by § 27-1-221(7), MCA, the District Court reduced it to $25,000, because it considered the violation of the restrictive covenant to be a contract action for which punitive damages are not allowed, and the $1,000,000 award is grossly disproportionate to a compensatory damage award of $6,500 for the tort of conversion.

¶84 The McKays do not contest that the portion of their action claiming damages for violation of the restrictive covenant is based on contract, nor do they contest that punitive damages are not allowed in an action based on a contract. Section 27-1-220(2)(a), MCA. They argue that the District Court erred in reducing the amount of punitive damages awarded because Wilderness did not object to the use of a special verdict form which

25

allowed the jury to find that punitive damages could be awarded if it found that Wilderness was guilty of malice in the breach of the covenant not to construct a commercial building on its part of Lot 4A. Thus, they argue Wilderness waived the prohibition on an award of punitive damages based on contract.

¶85 The McKays' argument assumes that (1) the punitive damage award was based on the breach of contract and (2) that although punitive damages are not allowed in a contract action, since Wilderness did not object to the verdict form, it waived any objection to the award of punitive damages. The verdict form, however, allowed the jury to consider punitive damages if it awarded damages for any of the McKays' claims, including the tort of conversion. Since the jury awarded the McKays damages on their claim for conversion, punitive damages were properly awarded irrespective of whether Wilderness objected to an award of punitive damages under a breach of contract theory. However, the amount of the punitive damage award cannot be sustained.

¶86 A $1,000,000 punitive damage award for conversion of $600 worth of trees cannot be sustained as it is grossly excessive. *See Seltzer v. Morton*, 2007 MT 62, ¶ 151, 336 Mont. 225, 154 P.3d 561 (citing *State Farm Mutual Auto Ins. Co. v. Campbell*, 538 U.S. 408, 418, 123 S. Ct. 1513, 1520 (2003)). And, the District Court's reduction of the punitive damage award was based on the jury's erroneous verdict that the trees were worth $6,500, not $600. Therefore, under the present circumstances, it would be inappropriate to affirm a $25,000 judgment for punitive damages.

¶87 The amount of punitive damages to be awarded in this case has not been appropriately considered by either the jury or the District Court. Thus, the judgment fixing the amount of punitive damages in the amount of $25,000 must be vacated. Upon retrial, the amount of punitive damages to be awarded should again be submitted to the jury upon proper evidence and instructions of law. Also, any award of punitive damages must again be reviewed by the District Court as provided in § 27-1-221(7), MCA.

¶88 *Issue 10: [Cross-Appeal] Did the District Court err in refusing to require Wilderness to remove a maintenance building it erected in violation of a restrictive covenant?*

¶89 *Issue 11: [Cross-Appeal] Did the District Court err in not enforcing a restrictive covenant prohibiting further division of a lot Wilderness owns in the Subdivision?*

¶90 Issues 10 and 11 are cross-appeal issues presented by the McKays for consideration in the event that the judgment for money damages is reversed. These issues are interrelated and we discuss them together.

¶91 A final injunction may be granted to prevent the breach of an obligation existing in favor of the applicant where:

(1) pecuniary compensation would not afford adequate relief;
(2) it would be extremely difficult to ascertain the amount of compensation which would afford adequate relief;
(3) the restraint is necessary to prevent a multiplicity of judicial proceedings; or
(4) the obligation arises from a trust.

Section 27-19-102, MCA.

27

¶92  The grant or denial of an injunction is within the sound discretion of the trial court and will not be reversed absent a "manifest abuse of discretion." *Shammel v. Canyon Resources Corp.*, 2003 MT 372, ¶ 12, 319 Mont. 132, 82 P.3d 912. A "manifest" abuse of discretion is an abuse that is obvious, evident, or unthinkable. *Shammel*, ¶ 12.

¶93  The District Court determined that Wilderness would not be required to remove the maintenance building on the northerly half of Lot 4A because: (1) monetary damages will afford adequate relief to the McKays; (2) it would be more difficult for the jury to assess damages for Wilderness' breach of the covenant if it were required to speculate as to the effect of removal of the building; (3) ordering removal of the maintenance building would not prevent a multiplicity of lawsuits; and (4) Wilderness' violation of the covenant does not involve a breach of trust. Upon retrial the McKays shall have adequate relief in the form of pecuniary compensation for any damage to their property occasioned by the violation of the restrictive covenants. Section 27-19-102(1), MCA.[3]

¶94  The District Court also denied the McKays' prayer for an injunction against Wilderness' division of the northerly half of Lot 4A into four separate parcels because a number of the lots in the Subdivision had already been divided in violation of the covenants without objection and the McKays themselves had violated the restrictive covenant against further subdivision by purchasing the southerly half of Lot 4A. Under the particular circumstances in this case, the District Court correctly concluded that "the

---

[3]  While this Court's decisions in *Homeowners Ass'n v. Wiley*, 239 Mont. 54, 778 P.2d 421 (1989); *Tipton v. Bennett*, 281 Mont. 379, 934 P.2d 203 (1997); and *Micklon v. Dudley*, 2007 MT 265, 339 Mont. 373, 170 P.3d 960, could support removal of the building, the McKays did not argue this line of cases on appeal.

McKays cannot at once both benefit from a violation of one of the covenants, and at the same time prosecute Wilderness for violating the same covenant." McKays violated the same restrictive covenant which they seek to enforce against Wilderness through the equitable remedy of an injunction. They do not come to court with clean hands. The District Court did not err in denying the McKays injunctive relief.

¶95 We conclude that the District Court did not manifestly abuse its discretion in denying the prayed for injunctions.

## CONCLUSION

¶96 The judgment of the District Court is affirmed in part, reversed in part, and remanded for a new trial as follows:

1. The judgment in favor of Wilderness that it did not trespass on the McKays' property is affirmed.

2. The judgment in favor of the McKays and against Wilderness awarding damages in the amount of $6,500 for conversion of trees is reversed. Upon remand, the District Court is directed to enter a judgment in favor of the McKays and against Wilderness for conversion in the amount of $600.

3. The judgment that Wilderness does not have an easement by necessity is reversed. Wilderness has an easement by necessity across the southerly 10 acres of Lot 4A of the Koocanusa Subdivision. Upon remand the District Court shall consider the location and scope of the easement.

4. The judgment in favor of the McKays and against Wilderness concluding that

29

Wilderness violated the restrictive covenant prohibiting the construction of a commercial building on the northerly half of Lot 4A of the Koocanusa Subdivision is affirmed.

5. The judgment in favor of the McKays and against Wilderness awarding damages in the amount of $350,000 for violation of the restrictive covenant prohibiting the construction of a commercial building on the northerly half of Lot 4A of the Koocanusa Subdivision is reversed. Determination of the amount of damages suffered by the McKays as a result of the violation of this restrictive covenant is remanded for a new trial. The McKays may amend their complaint to claim intentional or negligent infliction of emotional distress.

6. The judgment that the McKays are entitled to punitive damages is affirmed.

7. The judgment in favor of the McKays and against Wilderness awarding punitive damages in the amount of $25,000 is reversed. Upon retrial the amount of punitive damages to be awarded shall be again submitted to the jury and reviewed by the District Court.

8. The judgment of the District Court denying the McKays' petition for injunctions requiring Wilderness to remove its maintenance building on the northerly half of Lot 4A of the Koocanusa Subdivision and prohibiting further subdivision of such northerly half of Lot 4A is affirmed.

9. No party shall have costs on appeal.

/S/ JOHN WARNER

30

We Concur:


/S/ MIKE McGRATH
/S/ JAMES C. NELSON
/S/ JIM RICE
/S/ W. WILLIAM LEAPHART