No. 91-001

IN THE SUPREME COURT OF THE STATE OF MONTANA

1991

WILD RIVER ADVENTURES, INC.,

Plaintiff and Appellant,

-vs-

BOARD OF TRUSTEES OF SCHOOL DISTRICT NO. 8
OF FLATHEAD COUNTY,

Defendant and Respondent.

APPEAL FROM:    District Court of the Eleventh Judicial District,
                In and for the County of Flathead,
                The Honorable Michael H. Keedy, Judge presiding.

COUNSEL OF RECORD:

        For Appellant:

        Scott C. Wurster; Law Offices of Ambrose G. Measure,
        Kalispell, Montana

        For Respondent:

        M. Dean Jellison; Kalispell, Montana

Submitted on Briefs:  March 22, 1991

Decided:  May 30, 1991

Filed: FILED

MAY 30 1991

Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

Clerk

Justice R. C. McDonough delivered the Opinion of the Court.

This is an appeal from a grant of summary judgment to the defendant in a quiet title action. The plaintiff Wild River Adventures, Inc. (Wild River) appeals the order of the Eleventh Judicial District Court, Flathead County, granting summary judgment to the defendant, Flathead County School District No. 8 on the grounds that School District's predecessors in interest did not create an easement in plaintiff's favor across the School District's land. We affirm.

The sole issue on appeal is whether the District Court erred in denying the plaintiff's motion for summary judgment and granting the defendant's motion for summary judgment.

The uncontested facts in this case are as follows. Prior to February 20, 1986, the United States Forest Service owned the property that is the subject of this dispute. The suit involves several conveyances of the property as part of a unified complex land swap accomplished over a period of months involving School District No. 8 and its predecessors in interest: School District No. 6, the Thompsons, Sloan et. al., and the United States Forest Service (USFS).

On February 20, 1986, the property was conveyed by deed from the USFS to Sloan et. al. The deed was recorded on June 9, 1986. Prior to this conveyance, a certificate of survey (COS) was prepared in conjunction with the transfer. The COS shows two distinct roads, the West Glacier School Road and a forty foot

2

private road easement. The COS contains the language "[s]ubject to and together with a 40 foot public road known as the West Glacier School Road; [s]ubject to and together with a 40 foot private road easement as shown hereon. . . ." The COS was prepared for the Thompsons, in anticipation of the land swap.

On June 1, 1986, Sloan conveyed the property by warranty deed to the Thompsons. The grant used the same property description as contained in the COS: "[s]ubject to and together with a 40 foot private road easement". In their affidavit, Sloan et. al. alleged that it was their intention to convey title to the property as they received it from the USFS and they did not intend to reserve any easement across the property in making the conveyance.

On June 3, 1986, Thompson conveyed by Gift Deed the property to School District No. 6 for school purposes. On March 5, 1987, School District No. 6 conveyed the property to School District No. 8, the defendant here, to complete the land swap. The property descriptions in both conveyances again contained the language "[s]ubject to and together with a 40 foot private road easement." By affidavit, the Thompsons allege that they intended to retain the "40 foot private road easement" when they conveyed the property to the School District; they allege that this intent is further evidenced by their later conveyance of the easement to Wild River in a separate instrument. Despite this allegation, the record indicates that neither Sloan nor Thompson owned or had any interest in dominant property which could be served by the claimed easement

3

at the time of the conveyances.

Wild River operates a raft guide service on property leased from the Burlington Northern Railroad. The business is accessible by the West Glacier School Road and by the claimed "40 foot private road easement." In an instrument entitled "Easement," recorded on May 16, 1989, Thompson purports to have granted use of this easement to Wild River and its customers for business purposes. The defendant School District No. 8 subsequently erected two chain link fences with a gate blocking the "easement."

Wild River filed this quiet title action on June 22, 1989 to obtain a judicial determination that it had a valid right of way across the School District's property. Respondent answered and counterclaimed for a decree determining that it owned the property in fee simple subject only to the public easement, the West Glacier School Road, and a possibility of reverter should the property no longer be used for school purposes. The parties stipulated to allow Wild River access while litigation of the matter was pending. Each party moved for summary judgment on its claims. The court issued its order on August 6, 1990, denying Wild River's motion and granting the School District's motion. Wild River now appeals.

The standard of review of summary judgment is the same as that used by the trial court granting the judgment. In order for summary judgment to issue, the movant must show that there is no genuine issue as to all facts that are material in light of the substantive principles entitling the movant to judgment as a matter

4

of law. Rule 56(c), M.R.Civ.P.; Frigon v. Morrison-Maierle, Inc., (1988), 233 Mont. 113, 117, 760 P.2d 57, 60, Cerek v. Albertson's, Inc. (1981), 195 Mont. 409, 411, 637 P.2d 509, 511.

Wild River alleged in its motion for summary judgment the absence of a genuine issue of material fact. It alleged that the record before the court on the motion clearly showed that the Thompsons intended to reserve an easement for themselves and then later conveyed that easement to Wild River. Alternatively, if the trial court were to reject this argument, Wild River alleged that a genuine disputed material fact issue regarding the grantors' intent precluded the court from granting the School District's motion for summary judgment.

Wild River relies on the rule that "[a] grant is to be interpreted in favor of the grantee, except that a reservation in any grant . . . is to be interpreted in favor of the grantor." Section 70-1-516, MCA. See also City of Missoula v. Mix (1950), 123 Mont. 365, 372, 214 P.2d 212, 215-16. Thus, Wild River argues that the language, "subject to and together with a 40 foot private road easement," in the Thompson to School District No. 6 deed reserved an easement in the Thompsons' favor and such easement was later conveyed to Wild River. It further argues that the Thompsons' intent to create this easement is clearly shown in their affidavit. The School District, on the other hand, argues that while the deed noted that the property was "subject to" the above language neither the Thompsons nor any of their predecessors had

5

ever reserved an easement and thus no easement was ever created.

"An easement is an interest in land that cannot be created, granted or transferred except by operation of law, by an instrument in writing, or by prescription." Prentice v. McKay (1909), 38 Mont. 114, 118, 98 P. 1081, 1083. In this case we have a purported easement alleged to have been created by language in a deed as follows: "subject to and together with a 40 foot private road easement." Thus, we are faced with the question of whether the language "subject to" constitutes an exception or reservation sufficient to create an easement. The modern trend is to avoid overly technical interpretations of words in favor of ascertaining the actual intent of the parties:

> In the older English conveyancing, the term "exception" denoted some physical part of the conveyor's land which was excluded from the conveyance; while the term "reservation" denoted a retained tenurial right issuing from the granted land, as for example rents or services. Thus, neither of these technical terms fitted a retained easement with respect to the granted land. Since no man can have an easement in his own land, a conveyor could not technically claim to have withheld an easement at the time of conveyance. In short, he could not withhold something which did not exist. . . .
> In the United States a less technical attitude has helped to simplify the law and to effectuate better the real intent of the parties. A conveyor who, in terms, "excepts" or "reserves" an easement, is permitted to have the rights thereby intended to be enjoyed by him. . . . A reservation has been differentiated from an exception on the ground that a reservation connotes an implied regrant, while an exception operates as an exclusion of a right existent in the conveyor. . . .

3 Powell on Real Property, §407, pp. 34-39 to 34-42.

In City of Missoula v. Mix, supra, this Court stated:

> The modern conception of conveyancing, however, seeks to

6

ascertain the intent of the grantor from a consideration of the entire instrument, without regard to the position of the several clauses, and, in order to give effect to such intent when ascertained, an exception will be construed as a reservation, and visa versa.

Mix, 214 P.2d at 215, quoting Marias River Syndicate v. Big West Oil Co. (1934), 98 Mont. 254, 264, 38 P.2d 599, 601. Thus, when the intent of the parties is properly ascertained, an easement may be created by an exception as well as a reservation. See Kuhlman v. Rivera (1985), 216 Mont. 353, 359, 701 P.2d 982, 985.

Normally, however, the words "subject to" do not create an easement. See generally, 23 Am.Jur. Deeds, § 293 (1983). The words "subject to" used in their ordinary sense, mean subordinate to, subservient to or limited by. There is nothing in the use of the words "subject to", in their ordinary use, which would even hint at the creation of affirmative rights or connote a reservation or retention of property rights. Shell Oil Co., Inc. v. Manley Oil Corp., (7 Cir. 1941), 124 F.2d 714, 716; Englestein v. Mintz (1931), 345 Ill. 48, 177 N.E. 746, 752. See also Procacci v. Zacco (Fla. 1975), 324 So.2d 180. "Subject to" wording is commonly used in a deed to refer to existing easements, liens, and real covenants that the grantor wishes to exclude from warranties of title. Bruce and Ely, The Law of Easements and Licenses in Land, § 3.05[3], p. 3-13; accord Medhus v. Dutter (1979), 184 Mont. 437, 444, 603 P.2d 669, 673; Wilson v. Chestnut (1974), 164 Mont. 484, 492, 525 P.2d 24, 28; see also, 23 Am.Jur. Deeds, §293 (1983). Use of the words "subject to" in a conveyance is a qualification and rarely requires

7

a court to look to the intent of the parties.

Moreover, the parties intent is immaterial in this case, because regardless of their intent the Thompsons could not have created the easement in question. In their affidavit dated March 1, 1990, the Thompsons alleged that "to ensure access, at such a time as our right of reverter might arise, we reserved the disputed easement unto ourselves to serve the entire property." The District Court correctly noted that the reasoning that is the basis of the Thompsons' alleged intent is misguided. If the property did in fact revert to the Thompsons, there would be no reason for the Thompsons to have an easement across their own property. As the District Court noted, it is fundamental that no man can have an easement in his own land; the easement and the fee title would necessarily merge. Thus, we conclude that the wording "subject to" here does not create an easement.

Finally, we note that the trial court requested the parties to submit proposed findings of fact and conclusions of law supporting their positions and then issued its judgment in the form of proposed findings of fact and conclusions of law. Technically, this procedure is incorrect, for the trial court is precluded from determining material fact issues on a motion for summary judgment. See Rule 56(c), M.R.Civ.P. While we do not condone this practice, we find no reversible error in this case. The facts set out in the District Court's order are virtually uncontested, and any fact issue regarding intent is immaterial in this case.

8

We hold that there is no material fact issue in this case regarding the Thompsons' intent to create an easement. Viewing the plaintiff's factual allegations regarding the Thompsons' intent in the light most favorable to the plaintiff, the Thompsons could not have reserved an easement, and thus they had no easement to grant. Accordingly, the District Court did not err in granting the defendant's motion for summary judgment. The order of the District Court is

**AFFIRMED.**

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices

9

May 30, 1991

CERTIFICATE OF SERVICE

I hereby certify that the following order was sent by United States mail, prepaid, to the following named:

Scott C. Wurster
Law Offices of Ambrose G. Measure
P.O. Box 918
Kalispell, MT   59903

M. Dean Jellison
Attorney at Law
120 First Ave. West
Kalispell, MT   59901

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY:_____
Deputy