Justice Beth Baker delivered the Opinion of the Court.
***48 ¶ 1 Wendy Gean Phillips appeals an order of the Eleventh Judicial District Court, Flathead County, ruling on summary judgment that Levi Walker and Bethany Walker (the "Walkers") have both an express private road easement and a prescriptive easement to travel across Phillips's land. Phillips argues that the District Court: (1) erroneously relied on a corrected certificate of survey that was not signed by the land owner to find an express easement, and (2) erred in finding a prescriptive easement when Phillips had no notice of a claim of right and the use was instead permissive. We affirm.
PROCEDURAL AND FACTUAL BACKGROUND
¶ 2 Don Walker, Levi's grandfather, acquired a large parcel of property near Kalispell, Montana, in the 1970s. In 2007, Levi's father, Wade Walker, inherited the property from his father. Wade subdivided the land into seven tracts as described and depicted on Certificate of Survey No. 17859 ("Certificate"). Both Wade and the surveyor signed the Certificate, which certified that the purpose of the survey was to divide the property into Parcels A, B, C, D, E, F, and G to be conveyed to Wade's immediate family. Wade then conveyed Parcels A and F to Levi's grandmother, Anna Louise Walker, and conveyed Parcel B to Levi. Wade conveyed the remaining parcels to Levi's siblings. Wade died in May 2007, after the Certificate was recorded in Flathead County and after the parcels were conveyed. Each parcel's legal description concludes with the language: "Subject to and Together with a 30' Private Roadway and Utility Easement as shown hereon. Subject to all easements of record." On the Certificate, the easement runs along the eastern border of Parcel F, adjacent to property now owned by a third party and not at issue in this case, turning west in between Parcel E and Parcel F, and ending at the intersection of Parcels B, C, and G. Parcel A did not border the easement depicted on the Certificate. Diagram I shows the general layout of the parcels Wade ***49 subdivided. The private road and utility easement is shaded.[1]
DIAGRAM I *95 ¶ 3 In September 2007, four months after Wade's death, Correction Certificate of Survey No. 17859 ("Correction Certificate") was recorded in Flathead County. There is no evidence in the record to indicate who filed the Correction Certificate or what prompted the filing. The Correction Certificate was signed by the surveyor, but no one signed as the owner. The Correction Certificate changed the depiction of the thirty-foot private road and utility easement on the map. On the Correction Certificate, the easement runs where the shared driveway currently is located on the western edge of Parcel A, turning east at the intersection of Parcels B, C, and G, and ending at the juncture of ***50 Parcels D, E, and F. The corrected easement touches all seven parcels. The legal descriptions of each parcel remained substantively the same,[2] and no boundary locations changed for any parcel. The purpose of the Correction Certificate remained the same: to transfer the property to family. The upper left corner contained the following statement: "PURPOSE OF CORRECTION: To Relocate the 30 foot Private Roadway & Utility Easement." Diagram II depicts the corrected easement.
DIAGRAM II
*96 ¶ 4 The Walkers' home is located on Parcel B. Since 2009, the Walkers have accessed it by using a shared driveway, marked as the private ***51 road easement on the Correction Certificate and located on the western edge of Parcel A. In 2010, Levi acquired Parcel C. By the end of that year, Anna Louise had acquired all the land that Wade had conveyed to his other children. On July 4, 2011, Anna Louise sold her parcels to Phillips. Anna Louise showed Phillips both the Certificate and the Correction Certificate. The Deed of Trust Phillips signed referred to "Parcel A of Correction Certificate of Survey No. 17859." The Warranty Deed references "Exhibit 'A' " for the description of the property being transferred. Exhibit "A" consists of the legal descriptions for Parcels D through G of the "Corrected Certificate of Survey No. 17589." Phillips did not speak to the Walkers about the driveway or take any steps to investigate the Walkers' ongoing use of the driveway. About a year and a half after she acquired the property, Phillips discussed the discrepancies between the two certificates with her boyfriend, Matthew Martin. Martin testified that he told her the Correction Certificate might not be valid because it did not have Wade's signature. Phillips never raised the issue of validity with the Walkers or with Anna Louise.
¶ 5 Phillips financed her purchase of the parcels with a note and trust indenture to Anna Louise. In July 2014, the note matured with an outstanding balance remaining. To avoid foreclosure, Phillips deeded Parcels D, E, F, and G back to Anna Louise, retaining Parcel A for herself. Phillips relied on the "Corrected Certificate of Survey No. 17859" to describe the property in the deed in lieu of foreclosure. In November 2014, the Walkers *97 purchased Parcels D, E, F, and G from Anna Louise, and the legal description on their deed also referenced the "Corrected Certificate of Survey No. 17859." Following that transfer, Phillips owned Parcel A and the Walkers owned the rest of the parcels.
¶ 6 On September 13, 2016, Phillips installed a gate and a wire fence across the shared driveway, effectively blocking the Walkers' access to their property. The gate and fence were removed after a sheriff's deputy instructed Phillips to remove them. Thereafter, under Phillips's authority, Martin installed a new, more permanent gate across the driveway and installed "no trespassing" signs, again blocking the Walkers' access. On September 26, 2016, Phillips sent the Walkers a letter claiming that she had "decided to terminate the permissive use of the driveway effective immediately" and asking the Walkers to respect the driveway as her "private property." Phillips explained that an increased number of vehicles traveled on the driveway and traveled at high speeds. Her letter stated that gates and "no trespassing" signs were installed, but that the gates would be left unlocked until the ***52 Walkers built their own driveway, "in the event emergency personnel need access."
¶ 7 The Walkers filed this action in the District Court to determine the validity of their claimed easement in the shared driveway and to enjoin Phillips from refusing them access to the shared driveway. The Walkers and Phillips both moved for summary judgment. The Walkers sought recognition of both the right to an easement depicted on the Correction Certificate and a prescriptive easement to travel over a separate east to west road on Phillips's property. The easement depicted on the Correction Certificate is represented as segment A through E on Diagram III, and the prescriptive easement sought runs from depicted segment D to segment G on Diagram III.[3]
DIAGRAM III
*98 ***53 ¶ 8 The District Court granted the Walkers' motion for summary judgment on grounds that the Correction Certificate was valid, and the express easement depicted on it should be enforced.[4] The District Court also determined that the Walkers have a prescriptive easement to cross the northern section of Phillips's property. Phillips appeals.
STANDARD OF REVIEW
¶ 9 We review de novo a district court's grant or denial of summary judgment, applying the criteria of M. R. Civ. P. 56(c)(3). Yorlum Props. Ltd. v. Lincoln County , 2013 MT 298, ¶ 12, 372 Mont. 159, 311 P.3d 748. Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." M. R. Civ. P. 56(c)(3). Where the material facts are undisputed, we "must simply identify the applicable law, apply it to the uncontroverted facts, and determine who prevails." Yorlum Props. Ltd. , ¶ 12. "[W]hether a party is entitled to judgment on the facts is a conclusion of law, which this Court reviews to determine whether it is correct." Yorlum Props. Ltd. , ¶ 12.
DISCUSSION
¶ 10 1. Did the Walkers have an express easement to travel on the shared driveway as depicted on the Correction Certificate?
¶ 11 Phillips first argues that the Correction Certificate is not valid because no burdened land owner signed the corrected certificate of survey. The District Court thus erred in holding that the express easement depicted on the corrected certificate could be enforced. Phillips maintains that the Correction Certificate could not convey an easement to the Walkers because under the statute of frauds, the conveyance of an interest in real property, including express easements, must be in writing. See § 70-20-101, MCA.
¶ 12 "An easement is a nonpossessory interest in land-a right which one person has to use the land of another for a specific purpose or a servitude imposed as a burden upon the land."
***54 Blazer v. Wall , 2008 MT 145, ¶ 24, 343 Mont. 173, 183 P.3d 84. Easements reserved with the dominant tenement are retained for subsequent purchasers. Burleson v. Kinsey-Cartwright , 2000 MT 278, ¶ 16, 302 Mont. 141, 13 P.3d 384. An easement may be created by an instrument in writing, and a recorded document creating an easement conveys notice of its contents. James v. Chicago Title Ins. Co. , 2014 MT 325, ¶ 11, 377 Mont. 264, 339 P.3d 420. A grantor may expressly reserve an easement by referring in the document of conveyance to a certificate of survey "on which the easement is adequately described." Blazer , ¶ 27 ; see, e.g., Bache v. Owens , 267 Mont. 279, 286, 883 P.2d 817, 822 (1994) ; Halverson v. Turner , 268 Mont. 168, 173-74, 885 P.2d 1285, 1289 (1994).
¶ 13 "Subject to" language in a document of conveyance does not, by itself, create an easement. Yorlum Props. Ltd. , ¶ 15 (citations omitted). There is nothing in the ordinary use of the words "subject to" that lends itself to the creation of a reservation of property rights. Blazer , ¶ 28 (citing Wild River Adventures v. Bd. of Trs. , 248 Mont. 397, 401, 812 P.2d 344, 347 (1991) ). When "subject to" language is coupled with the incorporation of the certificate of survey into an instrument of conveyance, however, an express easement by reservation may be created. Bache , 267 Mont. at 286, 883 P.2d at 821 ; Yorlum Props. Ltd. , ¶¶ 15-17.
¶ 14 A certificate of survey is a "drawing of a field survey prepared by a registered surveyor for the purpose of disclosing facts pertaining to boundary locations." Section 76-3-103(1), MCA. Certificates of survey are governed by the Uniform Standards for Certificates *99 of Survey of the Administrative Rules of Montana. Admin. R. M. 24.183.1104. To avoid subdivision review under the family gift exemption, the certificate "must indicate the name of the proposed grantee, the relationship of the grantee to the landowner, and the parcel to be conveyed to the grantee." Admin. R. M. 24.183.1104(1)(f)(ii). If a certificate of survey is filed for reasons other than division or aggregation of land, it must contain a statement of purpose. Admin. R. M. 24.183.1104(1)(e). Every filed certificate must contain the signature and seal of the land surveyor responsible for the survey. Admin. R. M. 24.183.1104(1)(d)(xvi). There are no requirements that the landowner sign an amended or corrected certificate of survey if the original was lawfully executed.
¶ 15 Standing alone, neither the Certificate nor the Correction Certificate conveyed any property interest. The "Ownership Certificate" on both states, "[T]he purpose of this division of land is to transfer Parcels shown on this Certificate of Survey to my immediate ***55 family." The purpose of the Certificate was to draw new boundary lines that divided the property into parcels. The property then was conveyed to Wade's family through deeds Wade signed. Phillips does not argue, and there is no evidence to suggest, that any deed at issue violated the statute of frauds. The purpose of the Correction Certificate was to correct the depiction of the thirty-foot private road and utility easement on the properties. Wade and the surveyor both signed the original Certificate, which was appropriate because the purpose of the survey was to subdivide the land prior to transfer to Wade's immediate family members. The land surveyor signed the Correction Certificate, as required, but Wade did not. The lack of Wade's signature does not render the certificate invalid because it was not the controlling transfer document; rather, it was filed to accurately depict the location of the easement. Moreover, the Correction Certificate stated the purpose of the amended filing, as required by the Administrative Rules of Montana. Thus, the Correction Certificate does not violate the statute of frauds because it does not convey any property interest.
¶ 16 What's more, Phillips did not acquire her property from Wade under the original Certificate. All of the documents detailing the conveyance of property to Phillips referenced the Correction Certificate, and the Correction Certificate adequately describes the easement as a "30' Private Road & Utility Easement," depicted as a dotted line starting where the shared driveway is located. The deed of trust, warranty deed, and trust indenture conveying the property from Anna Louise to Phillips referenced the Correction Certificate, and Phillips relied on the Correction Certificate in her deed in lieu of foreclosure transferring the four parcels back to Anna Louise. Phillips has never been party to a conveyance of property that referenced the original Certificate. In Bache we observed that a certificate of survey "identifie[d] the easement clearly and specifically" with a dotted line labeled "private roadway easement." Bache , 267 Mont. at 286, 883 P.2d at 822. There, we held that the conveyance documents referencing that certificate of survey established the easement depicted on the certificate. Bache , 267 Mont. at 286, 883 P.2d at 822. This is the precise situation here.
¶ 17 When determining the existence of an express easement by reservation in the documents of conveyance, it is necessary that the owner of the servient property have "knowledge of its use or its necessity." Yorlum Props. Ltd. , ¶ 18 (quoting Davis v. Hall , 2012 MT 125, ¶¶ 20, 24-25, 365 Mont. 216, 80 P.3d 261 ; Blazer , ¶¶ 36, 51, 54, 56-57 ; Broadwater Dev., L.L.C. v. Nelson , 2009 MT 317, ¶ 38, 352 Mont. 401, 219 P.3d 492 ). The reference to the Correction Certificate in all ***56 the conveyance documents gave notice to Phillips that the property was being conveyed pursuant to a particular recorded document. The Correction Certificate was the only certificate of survey referenced in any relevant conveyance document. The easement on the Correction Certificate depicted a private road easement over the shared driveway on Parcel A, which provided access to the other parcels from the public road. Thus, Phillips had notice of the road easement over the shared driveway on her property.
¶ 18 The conveyance documents satisfied the statute of frauds and incorporated the *100 Correction Certificate. Because all conveyance documents referenced the Correction Certificate in the property description, Phillips had notice that a private road easement was reserved over the shared driveway on her property at the time she purchased the property. The District Court did not err in finding an express easement as depicted on the Correction Certificate, giving the Walkers an easement from point A to point E depicted in Diagram III.
¶ 19 2. Did the Walkers acquire a prescriptive easement to cross Phillips's property?
¶ 20 Phillips next challenges the District Court's determination that the Walkers acquired a prescriptive easement to cross her property from segment D through G that runs east to west to access a portion of the property.[5] She argues that the Walkers did not satisfy the open and notorious use or adverse use elements because she lacked notice of the Walkers' claim of right, and their use of the easement was permissive.
¶ 21 To establish a prescriptive easement, the claimant must show open, notorious, continuous, uninterrupted, exclusive, and adverse use of an easement for five years. Lyndes v. Green , 2014 MT 110, ¶ 17, 374 Mont. 510, 325 P.3d 1225. "Open and notorious use is a distinct and positive assertion of a right hostile to the rights of the owner and brought to the attention of the owner." Combs-Demaio Living Tr. v. Kilby Butte Colony, Inc. , 2005 MT 71, ¶ 14, 326 Mont. 334, 109 P.3d 252. The use "must give the landowner actual knowledge of the claimed right, or be of such a character as to raise a presumption of notice." Albert v. Hastetter , 2002 MT 123, ¶ 21, 310 Mont. 82, 48 P.3d 749.
¶ 22 Phillips acknowledges that the Walkers' use was open and obvious, but claims that she lacked notice of the adverse claim and the ***57 opportunity to know that her title was in jeopardy. Phillips acknowledged before the District Court, however, that when she purchased the property she "had the same constructive notice" as did the Walkers of the location of the express easement on the Correction Certificate. She also witnessed the Walkers traveling across the roadway outside of the express easement on her property numerous times from the time she acquired the property in July 2011 until she put up the gate in September 2016. Over the course of those five years, Phillips did not object to or address the Walkers' usage in any way. Because Phillips had notice of the Walkers' right to use the easements depicted on the certificates but witnessed them travelling on the east to west road on her property, outside of the express easement, she is presumed to have actual knowledge of the claimed right. Albert , ¶ 20. The District Court did not err in holding that the Walkers' use was open and notorious.
¶ 23 Phillips argues that even if the Walkers' use was open and notorious, it was not adverse. Notorious, continuous, uninterrupted, and exclusive use raises a presumption that the use also was adverse. Lyndes , ¶ 17. Phillips contends, though, that the Walkers' initial use of the property began permissively, before she owned the property, and that the use remained permissive after she purchased the property. Permissive use cannot ripen into a prescriptive easement. Wilson v. Chestnut , 164 Mont. 484, 491, 525 P.2d 24, 27 (1974). Nor may "neighborly accommodation or courtesy" create a prescriptive easement. Lyndes , ¶ 33 ; Pedersen v. Ziehl , 2013 MT 306, ¶ 15, 372 Mont. 223, 311 P.3d 765. But "passive acquiescence to another's use of his land is not evidence of permissive use." Lyndes , ¶ 19. The fact that a neighbor does not interfere with the use of an easement "because [she] wanted to get along and be [a] good neighbor does not transform [her] claim into one based upon mere neighborly accommodation." Lyndes , ¶ 22. " 'Permission' means more than mere acquiescence; it denotes the grant of a permission in fact or a license." Lyndes , ¶ 19 (quoting Cremer v. Cremer Rodeo Land and Livestock Co. , 192 Mont. 208, 212, 627 P.2d 1199, 1201 (1981) ).
*101 ¶ 24 Phillips claims that she "allowed the permissive use as part of a neighborly accommodation," but she provides no evidence to support that claim. The Walkers were using the driveways when Phillips acquired her property. Phillips never spoke with the Walkers or took any action regarding their use of the roads until she installed gates to block their access in September 2016. Phillips provides no evidence that she granted permission in fact or provided a license to the Walkers; her silence was mere acquiescence. Therefore, the District ***58 Court did not err in finding on the undisputed material facts that the usage was adverse and not permissive.
CONCLUSION
¶ 25 The District Court held correctly that there is an express easement over the shared driveway as depicted on the Correction Certificate. It did not err in finding an additional prescriptive easement running from east to west over Phillips's property. Accordingly, the District Court's order is affirmed.
We concur:
MIKE McGRATH, C.J.
LAURIE McKINNON, J.
JIM RICE, J.
INGRID GUSTAFSON, J.

Diagram I and Diagram II contained in this Opinion are not included in the record, but they do represent the layout of the parcels and easement depicted according to the diagrams that are included in the record. Diagram III is an excerpt from the exhibits contained in the record. Some labeling has been rephrased for clarity.

There is a minor difference in the language describing Parcel B on the Correction Certificate; that difference, however, does not change the legal description of the property.

The labels marked on the exhibit used in the District Court do not match the parcel numbers, but identify instead different segments of the existing roads within the subdivision.

Phillips argues on appeal that the District Court erroneously addressed the validity of the certificate because neither party raised the issue of the certificate's legal status, and she was not provided an opportunity to brief the issue. But the Walkers argued in their summary judgment filings that Phillips had acknowledged the validity of the easement depicted on the Correction Certificate. We review summary judgment orders de novo, and the parties have adequately briefed the issue on appeal.

The District Court held, and the Walkers do not challenge, that "the Walkers are prohibited from increasing the volume of their usage beyond what was established during the five-year statutory period."