FILED

12/14/2021

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 20-0540

DA 20-0540

IN THE SUPREME COURT OF THE STATE OF MONTANA

2021 MT 313N

LYNN MEHRING, f/k/a LYNN M. SANDEFER,

      Plaintiff and Appellee,

  v.

JEFFREY A. GOUDREAU and LINDSAY B. GOUDREAU,

      Defendants and Appellants.

APPEAL FROM:    District Court of the Eleventh Judicial District,
                  In and For the County of Flathead, Cause No. DV-19-1039(A)
                  Honorable Amy Eddy, Presiding Judge

COUNSEL OF RECORD:

      For Appellants:

          Colleen M. Dowdall, Dowdall Law, Missoula, Montana

      For Appellee:

          Randall A. Snyder, Snyder Law Office, P.C., Bigfork, Montana

                          Submitted on Briefs:  May 19, 2021

                                      Decided:  December 14, 2021

Filed:

                              _____
                                     Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 This appeal concerns a disputed easement located on Jeffrey and Lindsay Goudreau's (Goudreau) property in Flathead County. Lynn Mehring (Mehring) asserts the easement is located over an existing road that provides access to her adjacent property. Goudreau challenges the Eleventh Judicial District Court's Findings of Fact, Conclusions of Law & Decree of Quiet Title quieting title in the easement in favor of Mehring, and enjoining Goudreau from interfering with Mehring's use of the road. We affirm.

¶3 In 1978, Dale Homestead subdivided a single 40-acre parcel into two tracts, created by Certificate of Survey No. 4534 (COS 4534):



Tract 1 was roughly thirty acres in size, leaving Tract 2 as a "remainder" square of ten acres, which would approximately describe the parcel ultimately purchased by Goudreau and currently owned by them. COS 4534 identified an easement located outside the southern boundary of the entire 40-acre parcel, ostensibly providing legal access to the

tracts.[1]  In 1979, Homestead further subdivided Tract 1 of COS 4534 into three separate

parcels, as provided by Certificate of Survey No. 5355 (COS 5355).



---

[1] The record provides little information regarding this easement's creation.  In the District Court, Goudreau offered that Flathead County had previously granted the easement to Mr. Jerry Norris "for construction of a road for private purposes" and that the "30 feet is a 'declared right of way south.'"  The easement appears in subsequent surveys.

4

¶4     These parcels were transferred to Homestead and his wife's father, Eddie Sheppard.  Parallel to the western boundary of COS 4534's Tract 2, COS 5355 reflected a "30' private road and utility easement."  At some point between 1979 and 1991, Eddie and Lois Sheppard (Sheppard) acquired the entire 40 acres.

¶5     In 1991, Sheppard granted to Peter Tracy, a developer of the Meadow Lake County Water & Sewer District, "an easement over and across the Sheppard property" to construct a "water storage reservoir [(a water tower)] . . . and buried pipeline."  The Sheppard-Tracy Agreement provided that a water reservoir was to be "erected in the extreme northeast corner of the Sheppard property," with a proposed pipeline running southwest from the reservoir and crossing the current Goudreau property, as reflected in a map attached to the agreement:



The District Court found that this drawing also reflected the location of "the roadway" through the property.

¶6      That same year, Mehring's then-husband, Lynn Eugene Sandefer, purchased the entire 40-acre parcel from Sheppard. The Sheppard-Sandefer warranty deed stated the property was granted "subject to and together with":

> an Easement for 30-foot private road and utility easement as shown on Certificate of Survey No. 5355; [and]
>
> that certain Agreement and Reciprocal Grant of Easement for a water storage tower and a buried pipeline, recorded May 28, 1991[.][2]

¶7      In 1995, Sandefer sought to relocate common boundary lines between adjoining properties, eliminating the additional tracts created under COS 5355 and establishing the boundaries of the properties ultimately owned by Mehring and Goudreau, as provided in Certificate of Survey No. 12120 (COS 12120):

---

[2] The property was also subject to "an easement in favor of the United States of America recorded January 10, 1967." This easement predates and is not reflected on the materials in the record, making its location and purpose uncertain. The title insurance commitment issued for the transaction listed an additional easement that was exempted from coverage under the policy, described as "[a]n easement for an access road as granted by Flathead County in document recorded October 21, 1977." Goudreau offered in the District Court that this statement referred to the exterior easement reflected on COS 4534.



In addition to reflecting a "BPA Transmission Easement" on a reconfigured Tract 1, COS 12120 restated the easement along the southern boundary reflected in COS 4534, and the 30-foot easement along the western boundary of the original Tract 2 of COS 4534, the parcel ultimately owned by Goudreau. COS 12120 designated the parcel ultimately owned by Mehring as "Tract 2" as well.

¶8     Two years later, in August 1997, Lynn Eugene Sandefer deeded to Mehring the two eastern tracts of the 40-acre parcel, including the northern tract Mehring currently owns,

and the adjacent southern tract subsequently sold to Goudreau. The northern tract was transferred to Mehring via a quitclaim deed stating the conveyance was "subject to and together with" the same interests subjected to in the 1991 warranty deed:

> an easement for 30-foot private road and utility easement as shown on Certificate of Survey No. 5355; [and]

> that certain Agreement and Reciprocal Grant of Easement for a water storage tower and a buried pipeline, recorded May 28, 1991[.]

Likewise, Sandefer also quitclaimed the southern tract to Mehring "subject to and together with":

> an easement for 30-foot private road and utility easement as shown on Certificate of Survey No. 5355; [and]

> that certain Agreement and Reciprocal Grant of Easement for a water storage tower and a buried pipeline, recorded May 28, 1991[.]

Besides mineral rights and interests, these deeds did not include any granting or reserving language for easement property interests. Lynn Eugene Sandefer at some point conveyed the western half of the 40-acre parcel to a party unrelated to this action.

¶9 In November 2014, Mehring sold the southern tract to Goudreau, which their buy-sell agreement identified as "Tract 6D, shown as Tract 2 of Certificate of Survey No. 4534." Mehring and Goudreau agreed that "[t]he existing easement, shown on COS 5355 & 12120 will remain, granting easement to the seller's adjacent property." The title insurance commitment noted general access for the tracts was provided by the easement running along the southern border of the tract Goudreau was purchasing. Then, the commitment stated that, "[b]ecause access is granted over a private roadway, for insurance purposes and clarification, an easement for ingress and egress should be granted in the

8

proposed conveyance," and suggested the conveyance to Goudreau include the language "TOGETHER WITH an Easement for ingress and egress recorded October 21, 1977 . . . as shown on Certificate of Survey No. 4534." A warranty deed for this transaction was recorded January 2, 2015, and included this suggested language, purporting to grant the property "subject, however, to" previous easement agreements burdening the property. However, despite recognition that access was granted "over a private roadway," and the representation of a "30' road and utility easement" on COS 5355 and COS 12120 along the western boundary of the tract Goudreau was purchasing, no road existed along the entire length of that location. Instead, the existing road travels along this easement location, but then turns in a northeasterly direction to follow the path of the pipeline through Goudreau's property to the water tower, the general route of which is depicted on the map attached to the 1991 Shephard-Tracy agreement and as found by the District Court, "by visual inspection."

¶10    In June 2018, Goudreau text messaged Mehring, asking whether Mehring was planning on building on her property. Mehring replied she was "[j]ust not sure yet." Goudreau responded, "[j]ust curious because if the easement driveway road on our property needs leveled [f]or your driveway i could put those trees through mill for a project." Mehring informed Goudreau that "[i]t will be awhile before i do anything. My first priority is trying to get it brushed out some, so you may see some equipment in the future. I'll let you know before i start that tho! Thanks." In 2019, Mehring listed her property for sale;

9

soon after Goudreau blocked access to the existing road connecting Mehring's property to the main access road along Goudreau's southern boundary.[3]

¶11 Mehring filed a complaint requesting the District Court to quiet title in "accordance to the historical use of the easement" and permanently enjoin Goudreau from interfering with Mehring's rights of use and enjoyment of a "reserved, record easement to her property through the Goudreau property." Mehring alleged that "[t]he warranty deed given to Goudreau reserved easements and rights of way of record." Following the issuance of a temporary restraining order, Goudreau agreed by stipulation not to interfere with Mehring's access to her property on the condition that Mehring "inform any interested purchaser that the legal access along the subject road is disputed." Goudreau answered the suit by disputing that the warranty deed reserved easements to Mehring. Goudreau admitted to the existence of a road and asserted they had blocked access to protect their property and "the property of the Water Tower, the actual beneficiary of the easement across Goudreaus' property."

¶12 The state of the property at the time of suit, including the location of the water-tower road and alleged 30' road and utility easement is best illustrated by the following topographic map the parties stipulated to as a demonstrative exhibit:

---

[3] The District Court found that this text conversation weighed in favor of its findings, and the parties dispute its meaning in their arguments. We conclude the conversation is ambiguous and adds nothing to the resolution of the matter.

10



¶13    Mehring attested via affidavit that:

I have owned my property in Columbia Falls in Flathead County for more than twenty years. This property is accessed by a private roadway and easement which has been in existence since prior to my ownership. The same

11

roadway also accesses a water tower on my property serving Meadow Lake Golf Course and their community.

The roadway is the only road through the Goudreau ten acres which I sold to them in 2014. The roadway runs up the west boundary of the south-ten acre tract sold to Goudreau. I have always believed this road and the easements described in the 1991 Easement Agreement, COS 5355 and COS 12120 were one in the same. While I knew the roadway turned northeast, I was not aware that it did so while on the south ten acre tract until prior to litigation.

¶14 The District Court set a bench trial for August 31, 2020. However, Mehring appeared before the District Court that day representing "that the parties had agreed there were no factual disputes, only a legal determination to be made by the Court." Mehring and Goudreau submitted proposed findings of fact and conclusions of law and stipulated to the introduction of "supplemental facts" and exhibits.[4] The stipulated facts included:

That Plaintiff and ex-husband Lynn Sandefer (the "Sandefers") always believed that the easement showing on COS 5355 and COS 12120 referenced the existing road through the subject properties;

The distance between the Goudreau residence and the subject road is 146 feet; and

Surveys frequently depict or illustrate easements in a location different from where the intended roadway actually exists.

Exhibits presented to the District Court included a topographic map showing an "existing road to water tower" traversing the Goudreau tract, and accompanying photographs of the

---

[4] Including: COS 4534, 5355, and 12120; the 1991 Sheppard-Tracy agreement; documents from the 1991 Sheppard-Sandefer transaction (including the Warranty Deed and Preliminary Title Commitment); the 1997 Sandefer-Sandefer Quitclaim Deeds; documents from the 2014 Mehring-Goudreau transaction (including the Buy-Sell Agreement, Warranty Deed, and Preliminary Title Commitment); 2018 Mehring-Goudreau text messages; topographic map and aerial photograph of the Mehring and Goudreau properties; and property photos of the Goudreau property and subject road.

12

road, variously labeled, among others, as "[r]oad begins curving northeast," "[a]t Goudreau north boundary, looking northeast," and "[o]n Mehring road, looking NE to watertower [sic] (ridge to west)."

¶15 On October 5, 2020, the District Court issued its findings of fact, conclusions of law, and decree of quiet title in favor of Mehring.

> Mehring has an easement for egress, ingress and utilities across and along the existing road. The easement is 30 feet in width. It commences at the southwest corner of Tract 2 of COS 4534, runs north along the existing road, then continues northeasterly in its existing location, where the centerline is the center of the existing road.

The District Court concluded that Sandefer, in 1997, granted Mehring "an easement across the road describe[d] in (1) the 1991 Easement Agreement, (2) COS 5355 and (3) COS 12120," and that by reservation, Mehring reserved the easement for her use in her conveyance to Goudreau. The District Court concluded this express reservation was consistent with the parties' clear intent to reserve an easement over the existing road. Alternatively, the District Court concluded that, even if the only easement expressly reserved was the one along the Goudreau's western border as reflected in COS 5355 and COS 12120, the parties were mutually mistaken in their belief that the actual road did not run entirely on that location, and reformation of the deed and easement in accordance with the parties' intentions was appropriate, reasoning further that Mehring:

> clearly intended that the north ten acres have legal access and they understood the depicted easement to do so. They were mistaken in their [belief] that the road did not remain entirely on the south ten acres' west boundary. That was a mutual mistake made in 1997 when Lynn Sandefer deeded the two ten-acre parcels to Lynn Mehring.

13

The mutual mistake repeated in 2014 when Mehring and Goudreau signed their buy sell agreement expressly reserving access across the surveyed easement, when each party understood it was the existing road, and in 2015 with the recorded deed reserving all easements and exceptions.

Goudreau appeals.

¶16    "Findings of fact . . . must not be set aside unless clearly erroneous." M. R. Civ. P. 52(a)(6). Findings are clearly erroneous if they "are not supported by substantial credible evidence," the lower court has "misapprehended the effect of the evidence," or after review of the record, this Court is left with a "definite and firm conviction that a mistake has been made." *Blazer v. Wall*, 2008 MT 145, ¶ 22, 343 Mont. 173, 183 P.3d 84 (citing *Tomlin Enterprises, Inc. v. Althoff*, 2004 MT 383, ¶ 12, 325 Mont. 99, 103 P.3d 1069). "We view the evidence in the light most favorable to the prevailing party when determining whether substantial credible evidence supports the district court's findings." *Pedersen v. Ziehl*, 2013 MT 306, ¶ 10, 372 Mont. 223, 311 P.3d 765 (quoting *Steiger v. Brown*, 2007 MT 29, ¶ 16, 336 Mont. 29, 152 P.3d 705). *See also Hellickson v. Barrett Mobile Home Transp.*, 161 Mont. 455, 459, 507 P.2d 523, 525 (1973) (stating that trial court findings are presumed correct); 75B Am. Jur. 2d *Trial* §§ 1581, 1586 (Lexis through 2021).

¶17    "We review a district court's conclusions of law de novo, determining whether the court's interpretation and application of the law is correct." *Blazer*, ¶ 22 (citing *Micklon v. Dudley*, 2007 MT 265, ¶ 8, 339 Mont. 373, 170 P.3d 960; *Giambra v. Kelsey*, 2007 MT 158, ¶ 28, 338 Mont. 19, 162 P.3d 134). "Whether an express easement has been created is a question of law." *Wiegele v. W. Dry Creek Ranch, LLC*, ¶ 15, 2019 MT 254, 397 Mont.

14

414, 450 P.3d 879 (citing *Reichle v. Anderson*, 284 Mont. 384, 387, 943 P.2d 1324, 1326 (1997)).

¶18 Goudreau argues the District Court's findings of fact are erroneous and insufficient to establish an express easement across the existing road traversing their property. Goudreau concedes an easement in Mehring's favor along the full length of the western border of their tract that provides access to Mehring's ten acres. However, they argue the 1991 Shephard-Tracy pipeline agreement granted no access right to Mehring or her predecessors and that the District Court erred by essentially conflating the two and holding that the western border easement and waterline easement are one and the same. As a result, Goudreau urges that Mehring "does not have a right to access her property . . . using [the] waterline easement" because she is not a successor in interest to that easement and failed to reserve a right to use the existing road.

¶19 Easements are nonpossessory interests in the land of another authorizing the right to use real property for a particular purpose. *O'Keefe v. Mustang Ranches HOA*, 2019 MT 179, ¶ 16, 396 Mont. 454, 446 P.3d 509 (citing *Blazer*, ¶ 24); *see e.g.*, § 70-17-101(4), MCA (defining incidental or appurtenance easements, such as a "right-of-way," as "land burdens or servitudes upon land . . . attached to other land as incidents or appurtenances"); § 70-17-102(5), MCA (defining servitudes not attached to land). "Appurtenant easements benefit a particular parcel of land to the burden of another and perpetually run with title to both." *O'Keefe*, ¶ 16 (citing *Blazer*, ¶ 24). "An estate or interest in real property," such as an easement, arises either by prescription, "operation of law [e.g., implication from necessity or prior use] or a conveyance or other instrument in writing [e.g., an express grant

15

or reservation or a written declaration of covenant]." Section 70-20-101, MCA; *O'Keefe*, ¶ 16 (citations omitted). When creating an easement, the grantor must have a common vested ownership interest in the dominant and servient tenements. *O'Keefe*, ¶ 17 (citations omitted). Express easements are adequately granted by conveyance instruments if the writings use "appropriate language" that is "substantially sufficient to convey the severed estate, grant or reserve the intended easement, identify the dominant and servient estates, and indicate the nature and scope of the right reciprocally burdening and benefitting the servient and dominant estates." *Wiegele*, ¶ 17 (citing *Broadwater Dev. LLC v. Nelson*, 2009 MT 317, ¶ 12, 352 Mont. 401, 219 P.3d 492); *O'Keefe*, ¶ 17 (citing *Walker v. Phillips*, 2018 MT 237, ¶¶ 14-18, 393 Mont. 46, 427 P.3d 92; *Yorlum Props. Ltd. v. Lincoln Cty.*, 2013 MT 298, ¶¶ 14-27, 372 Mont. 159, 311 P.3d 748; *Davis v. Hall*, 2012 MT 125, ¶¶ 19-34, 365 Mont. 216, 280 P.3d 261). Grantees burdened by an easement must "have knowledge of its use or its necessity," sufficient to put the grantee on "'inquiry notice' of the easement and the need for a reservation of a way of ingress and egress." *Halverson v. Turner*, 268 Mont. 168, 172-73, 885 P.3d 1285, 1288 (1994) (citing *Graham v. Mack*, 216 Mont. 165, 174, 699 P.2d 590, 596 (1985)); *Benson v. Pyfer*, 240 Mont. 175, 180, 783 P.2d 923, 926 (1989)). It is satisfactory for conveyance instruments to reserve easements by language incorporating "a recorded plat or certificate of survey on which the easement is adequately described." *Blazer*, ¶ 27 (citing *Bache v. Owens*, 267 Mont. 279, 286, 883 P.2d 817, 822 (1994); *Halverson*, 268 Mont. at 173-74, 885 P.2d at 1289).

¶20    We consider whether an express easement was created by reservation and, if so, its location. First, it is undisputed that Mehring had a common vested ownership interest in

16

the dominant tenement (i.e., the current Mehring tract) and the servient tenement (i.e., the current Goudreau tract) prior to selling the southern tract to Goudreau. We thus must disagree with the District Court's conclusion that Sandefer "grant[ed] Mehring an easement across the road" by way of the 1997 warranty deeds. That conveyance placed ownership of both tracts in Mehring, extinguishing any easement to her as being the same person holding the servient tenement and the right to the servitude. Section 70-17-111(1)(a), MCA; *see also Wild River Adventures v. Board of Trustees*, 248 Mont. 397, 401-02, 812 P.2d 344, 346-47 (1991).[5]

¶21 The question then becomes whether the conveyance documents were otherwise sufficient to create an express easement by reservation across the Goudreau tract for Mehring to access her tract, and specifically, at the location across the water tower road.

¶22 "Grants are to be interpreted in like manner with contracts in general." Section 70-1-513, MCA; *see also Wiegele*, ¶ 18 (citing *Nelson*, ¶ 19). "Several contracts relating to the same matters, between the same parties, and made as parts of substantially one transaction are to be taken together." Section 28-3-203, MCA. Contracts "may be explained by reference to the circumstances under which it was made and the matter to which it relates." Section 28-3-402, MCA. So long as the object of the contract is "ascertainable and lawful," contracts must also be interpreted to "give effect to the mutual intention of the parties as it existed at the time of contracting." Section 28-3-301, MCA.

---

[5] Further, the "subject to" language in the deeds was insufficient, without more, to create an easement. *See generally Blazer*, ¶ 28 (citations omitted).

17

For written contracts, mutual intention is "ascertained from the writing alone if possible." Section 28-3-303, MCA. If due to mutual mistake a contract "does not truly express the intention of the parties," courts may revise the contract "on the application of a party aggrieved so as to express that intention." Section 28-2-1611, MCA. *See also* § 28-3-304, MCA, § 28-2-905(1)(a), MCA, and § 70-20-202(1)(a), MCA.

¶23 The contract documents utilized by Mehring and Goudreau and the circumstances of the transaction, as well as permissible inferences drawn therefrom, demonstrate the parties' intentions. Mehring's property, including both tracts, bordered property that Mehring did not own. By selling the southern tract, which provided the only legal access from the road running along the southern border of the southern tract, Mehring divided her property and, without an easement, the northern tract she retained would have been landlocked and legally inaccessible because none of the previously created easements provided legal access. As noted, the easement along the southern tract's western border had been extinguished, and the 1991 Sheppard-Tracy easement granted access to Tracy and the Meadow Lake development.[6] It was thus imperative for Mehring to newly reserve access to her retained property,[7] and this mutual intention was reflected in the transactional

---

[6] Notably, the 1991 Sheppard-Tracy agreement did not fix a precise location for the pipeline easement, providing only that the easement "shall run from the tower in a generally southwest direction, to the southern boundary of the Sheppard property" but its precise location "shall be as recommended by engineers" and will "be placed in such a manner that it will result in the least interference" with the property.

[7] Beyond a claim of easement by implication or necessity, which was not litigated herein. *See LHC, Inc. v. Alvarez*, 2007 MT 123, ¶ 20, 337 Mont. 294, 160 P.3d 502 ("It is well-established that we will not address issues on appeal that were not properly raised in the district court.") (citation omitted).

documents, including the suggestion of the title commitment that easement language be included in the deed. This intention is not disputed by Goudreau, but the parties dispute the location of the easement, Goudreau contending it lies along the western edge of the southern tract, and Mehring contending it follows the existing water-tower road.

¶24 The parties' buy-sell agreement provides that "[t]he existing easement, shown on COS 5355 & 12120 *will remain*, *granting easement* to the seller's adjacent property." (Emphasis added.) The citations to these certificates of survey are references to the western border easement, over which the existing road runs for some distance before turning in a northeasterly direction along the pipeline toward the water tower. The additional language regarding the "remaining" and "granting" of an easement is problematic, as the referenced easement could not, technically, "remain," because it had been extinguished at that point, which the parties did not understand. As noted above, Mehring averred it was her belief the easement to her property was over the only existing road. This belief was furthered by the title commitment's statement that "access is granted over a private roadway," despite its suggestion that this access be reserved by reference to COS 4534.[8] The District Court found that the buy-sell agreement "does not reference a future road, but clearly implies and is consistent with Mehring's understanding that the surveyed easement is the existing road." It stated that, "there was only ever one road that was obvious by visual inspection. . . . [t]his road was the ONLY access through Goudreau's property and to the

---

[8] The warranty deed utilized this suggestion, referencing "an Easement for ingress or egress . . . as shown on Certificate of Survey No. 4534."

19

northerly ten acres which reserved the easement," noting that the road ran partially over the western boundary of the southern lot. (Capitalization in original.) It determined, "the Court therefore finds, that the easement reserved in the [] deed to Goudreau is along the existing road," adding, "there could be no other."

¶25 We conclude the evidence supports the District Court's findings, and that the parties' agreement cannot be interpreted otherwise, as it would be unreasonable to interpret the transaction documents as intending for Mehring to reserve an access that fails to provide physical access to her property. The evidence indicates substantial mutual mistakes, those being the extinguishment of the easement along the western boundary of the southern tract, and the location of easement unquestionably reserved by Mehring. "A mutual mistake regarding a material fact is 'so substantial and fundamental' a mistake that it 'defeat[s] the object of the parties in making the contract.'" *In re Platt*, 2018 MT 43, ¶ 23, 390 Mont. 338, 413 P.3d 818 (quoting *Keller v. Liberty Northwest, Inc.*, 2010 MT 279, ¶ 23, 358 Mont. 448, 246 P.3d 434). In revising a contract, we presume all parties "intended to make an equitable and conscientious agreement." Section 28-2-1612, MCA. Further, for revisions, "the court may inquire what the instrument was intended to mean and what were intended to be its legal consequences and is not confined to the inquiry what the language of the instrument was intended to be." Section 28-2-1613, MCA. Deed reformation is permitted if the mistake is established by clear and convincing evidence, "a preponderance of evidence that is definite clear, and convincing." *Thibodeau v. Bechtold*, 2008 MT 412, ¶ 23, 347 Mont. 277, 198 P.3d 785. Here, the failure of the conveyance

instruments to identify the easement's precise and proper location undermined a major object of contract, a "substantial and fundamental" mistake. *In re Platt*, ¶ 23.

¶26 The requirements for adequately describing an easement are, first, "the identities of the dominant and servient tenements must be ascertainable with reasonable certainty from the transaction documents; second, the transaction documents must give the owner of the property being burdened by the servitude knowledge of its use or necessity." *Yorlum Props.*, ¶ 18 (citing *Davis*, ¶¶ 20, 20-25; *Blazer*, ¶¶ 36, 51, 54, 56-57; *Nelson*, ¶ 38) (internal quotation marks omitted). The buy-sell agreement and the title commitment reference that the purpose of the easement is to grant Mehring access to her remaining property, a purpose also illustrated in COS 12120's depiction of Mehring's remaining landlocked property. *See Yorlum Props.*, ¶¶ 18, 25 (citations omitted). These documents collectively meet the minimum requirements for identifying the dominant and servient tenements and giving Goudreau knowledge of the easement's use or necessity. *Yorlum Props.*, ¶ 18 (citations omitted). Even when an easement is created by means of depiction of a certificate of survey referenced in a deed, the easement may still be valid if the referenced documents do not state its precise location. *Yorlum Props.*, ¶ 25. Goudreau stipulated that surveys do not always show an easement's precise location. Reforming the warranty deed to establish that the reserved easement tracks along the existing water-tower road does not change its essential elements. *See Yorlum Props.*, ¶ 25. While we utilize a slightly different rationale, as discussed herein, we affirm the District Court's conclusion that the intent of the transaction is fulfilled by establishing the reserved easement along the existing water-tower road and affirm its determination that the easement and deed are so reformed.

Consequently, we affirm the District Court's entry of a permanent injunction from interference of the road and easement by Goudreau.

¶27 We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions. This appeal presents no constitutional issues, no issues of first impression, and does not establish new precedent or modify existing precedent.

¶28 Affirmed.


/S/ JIM RICE


We concur:


/S/ MIKE McGRATH
/S/ LAURIE McKINNON
/S/ JAMES JEREMIAH SHEA
/S/ DIRK M. SANDEFUR